No. 23184.

WILLIE GENE WAFER, A/K/A WILLIAM WAFER *v.* THE PEOPLE OF THE STATE OF COLORADO.
(488 P.2d 73)

Decided August 9, 1971.    Rehearing denied September 13, 1971.

ALFRED C. COXE, C. LEE GOODBAR, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, GEORGE E. DE-ROOS, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

DEFENDANT Willie Gene Wafer was found guilty by a jury of second-degree murder. Claiming the trial court erred in several respects, this defendant, on writ of error, urges that his conviction be reversed and that he be granted a new trial. We find no reversible error. Therefore, the trial court's judgment is affirmed.

Evidence presented at trial shows that defendant Wafer shot and killed victim Moore on the evening of November 10, 1966. Defendant, an Army sergeant, and some servicemen friends were in Colorado Springs on this evening to do some celebrating. About 8:00 P.M., defendant and the victim bumped shoulders while passing each other at Milt's Bar. Words were exchanged, then apologies were made and each party went his own way. Later in the evening, defendant and the victim noticed each other's presence at Duncan's Bar which is less than a block in distance from Milt's Bar. The evidence is divergent as to what happened at this point.

Defendant testified that upon entering Duncan's Bar, he was "called names" by the victim and his friends; and that a little later, Green, a friend of the victim, pulled a knife on him. Defendant Wafer thereupon

pulled a gun out of his rear pocket, warned Green, and swung at him with the gun, hitting him on the shoulder. The gun accidentally fired but no one was hit. Then defendant swung around and, seeing victim Moore with a knife, he warned Moore to "get back" but Moore came toward him. Wafer shot Moore and immediately left the premises. He was arrested the next day. Wafer also testified that he was carrying the gun because it was in a car which he was having serviced and he didn't want to leave it in the car or at his fiance's house.

Defendant's version was generally supported by several witnesses who were the friends of the defendant and who were at the scene of the shooting.

Testimony presented by the People indicates that when the defendant first entered Duncan's Bar words were exchanged between him and two friends of victim Moore named Green and Davis. Green, by his testimony, admitted pulling a knife on the defendant. Thereupon, defendant disappeared and several minutes later, came back through the front door of Duncan's Bar with a gun in his right hand. The record reveals evidence indicative of the People's theory that during the interim between his leaving these premises and his return, he went to the car of a friend and obtained the gun. With the gun in hand, defendant struck at Green, who no longer had the knife in his hands. A shot was fired from the gun during this occurrence, but no one was hit. The defendant then swung around, saw victim Moore, whose hands were at his side, swore at him and shot him. Neither Green nor victim Moore took any aggressive actions toward defendant Wafer after his re-entry into Duncan's Bar. At the scene were two off-duty military policemen, one of whom testified that defendant stopped, paused and shot the victim, whose hands were at his side.

I.

Defendant contends that statements he made to the police after his arrest the next day should not

have been allowed into evidence because the People did not show that the defendant intelligently and knowingly waived his right to counsel and his right not to incriminate himself. This contention appears to be premised mainly on the fact that no advisement form was signed by the defendant or that defendant did not expressly refuse the offer of counsel.

During the *in camera* hearing, it was shown, and the trial court so found, that the defendant was properly advised of his rights upon his initial pickup by the police on the morning of November 11, 1966; that he was again fully and properly advised of his rights prior to interrogation at the police station on November 11, 1966; and that he was again properly advised of his rights on November 13, 1966, when he was again interrogated. The interrogation on the 11th lasted about one and one-half hours and on the 13th, it lasted about one-half hour. Defendant told the police that he understood his rights. The police officers testified that defendant didn't appear uncomfortable or request anything during the interrogation sessions but that he talked freely and voluntarily offered to direct police to the place where he had abandoned the gun. The police officers testified that no threats or promises were made to him. Defendant did not testify at the *in camera* hearing.

The question before us then is whether the People must show that the defendant expressly waived his constitutional rights in order to render his statements admissible or whether such waiver may be shown from the circumstances attendant upon the making of the statements?

Defendant relies upon *Sullins v. United States,* 389 F.2d 985 (10th Cir. 1968), for the proposition that *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, requires that an express waiver of rights by a defendant be shown by the People to establish that his rights were knowingly and intelligently waived and that his statements were voluntarily made. We note that

cases more recent than *Sullins, supra,* have held that a showing of affirmative action by a defendant in requesting an attorney or in signing an advisement form is not required by *Miranda* where the circumstances otherwise clearly show that a defendant knowingly, intelligently, and voluntarily waives these constitutional rights. *See Bond v. United States,* 397 F.2d 162 (10th Cir. 1968) and *United States v. Montos,* 421 F.2d 215 (5th Cir. 1970).

This court recently in *Reed v. People,* 171 Colo. 421, 467 P.2d 809 had occasion to consider a fact situation where the defendant had not expressly waived his constitutional rights. We held therein as was held in *Bond, supra,* that circumstances surrounding the giving of a statement by a defendant are sufficient under *Miranda* to establish the equivalent of an express waiver. *Accord, Mingo v. People,* 171 Colo. 474, 468 P.2d 849; *Billings v. People,* 171 Colo. 236, 466 P.2d 474.

Under the circumstances here, we hold that the trial court properly ruled that statements were voluntarily given after a knowing and intelligent waiver of constitutional rights.

## II.

█ Defendant also argues that the trial court erred in refusing to permit him to question several of the People's witnesses as to whether or not the victim had taken marijuana or pot on the evening of the fatal shooting; whether the victim may have been under the influence of marijuana; and whether he was inclined to be dangerous or violent if under the influence of marijuana. The sole basis given for making such inquiries was counsel's representation to the trial court that there was evidence which could be presented showing that during the evening of the fatal shooting the victim had made an inquiry of an acquaintance as to where he could obtain some marijuana. No evidence was presented or offered which indicated in any way that the victim was in fact under the influence of mari-

juana; that he ever had been in the past under the influence of marijuana; or that he was ever an occasional or regular user of marijuana. Even assuming that any of the above facts could be shown, there was no evidence presented or offered which would indicate that being under the influence of marijuana made this victim or any other person dangerous or violent.

In this same category, defendant states also that the trial court erred in not granting his motion for a temporary cessation of the trial — to resume after several days — in order to permit counsel to make an out-of-state contact with a possible witness who reportedly could furnish information that he knew victim Moore as a serviceman in Korea and knew that he "did tend to go downtown looking for fights" and that he did take part in some fights.

As to both categories of this proffered evidence, the trial court did not err in its rulings. The offers of proof were highly speculative as to whether or not any relevant or material evidence would have been forthcoming had the trial court permitted the requested inquiries and had granted the continuance to allow defendant's counsel to make an out-of-state contact with a possible witness. It is only where the offer of proof not only spells out that the proffered evidence is clearly definitive as to its content but is also admissible as relevant and material that it may be said that the trial court should have admitted such evidence or allow counsel a reasonable time during the course of a trial to produce such evidence. To delay a trial for this reason, it must also be shown that this evidence was not discovered or discoverable until after the commencement of the trial.

Counsel for the defendant apparently assumed that the proffered evidence would show that the defendant had the reputation as being aggressive and belligerent under certain circumstances. However, this proffered evidence is not that definitive and therefore, on this

basis, the trial court's rulings were not erroneous. The foundation laid for the proffered evidence was totally insufficient.

### III.

Defendant also contends that the court erred in refusing his tendered instructions and in giving certain of its own instructions. In this regard, we find that the instructions as given by the trial court were proper and sufficient, and the trial court did not err in refusing to give the defendant's tendered and rejected instructions. Only a brief discussion of the flight instruction about which the defendant complains is necessary.

▆ The evidence is clear that defendant left Duncan's Bar immediately upon the shooting of Moore. By defendant's own admission, he discarded his gun. Defendant testified that he left because he was scared and that he didn't know that he had actually shot Moore. Under these circumstances, it was not reversible error to instruct the jury that defendant's flight immediately after a crime with which he is charged may be used as circumstantial evidence in establishing his guilt. *See Mills v. People,* 146 Colo. 457, 362 P.2d 152; *Cf. Gallegos v. People,* 166 Colo. 409, 444 P.2d 267.

### IV.

Defendant raises several other contentions which after review we do not find meritorious. They present no new or unique questions, and therefore, we decline to extend this opinion by a discussion which would lack any precedential value.

Judgment affirmed.