The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Ricky Lyle TAGGART, Defendant-Appellant.

No. 80SA32.

Supreme Court of Colorado, En Banc.

Jan. 5, 1981.

Rehearing Denied Feb. 2, 1981.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., William Morris, Asst. Atty. Gen., Denver, for plaintiff-appellee.

J. Gregory Walta, Colorado State Public Defender, Terri L. Brake, Deputy State Public Defender, Denver, for defendant-appellant.

1. On both the date of the offense and conviction, a class 3 felony carried a penalty of 5 to 40 years. Section 18–1–105, C.R.S. 1973 (1978 Repl.Vol. 8).

2. The defendant was not charged with criminally negligent homicide. That offense was

**QUINN, Justice:**

Ricky Lyle Taggart (defendant) was convicted of the crimes of child abuse resulting in serious bodily injury, section 18–6–401, C.R.S. 1973 (1978 Repl.Vol. 8), a class 3 felony,[1] and criminally negligent homicide, section 18–3–105, C.R.S. 1973 (1978 Repl. Vol. 8), a class 1 misdemeanor.[2] He claims that the statutory scheme underlying his conviction for child abuse is constitutionally infirm, that the trial court erred in its rulings on challenges for cause during jury selection and on evidential matters during the trial, and, lastly, that the form of verdict submitted to the jury violated the constitutional requirement of unanimity. We affirm.

### I. Trial Proceedings

The information charged that the defendant on November 30, 1977, knowingly or negligently, and without justifiable excuse, caused a child, Christopher D. Stone (Chris), to be placed in a situation that might endanger his life or caused him to be cruelly punished, and as a result thereof the child suffered serious bodily injury. The charge arose out of the death of Chris, the defendant's four-year old stepson. Chris lived in the trailer home at 5225 Adams Street in Denver with the defendant and Donna Taggart, who was Chris' natural mother and the defendant's wife.

The cause of injury and death was the central issue during the trial. The prosecution's evidence established that Chris died of severe brain damage inflicted by the defendant in the course of a severe beating with a thermos jug while he and the child were alone in the trailer home. The incident that precipitated the beating was Chris' wetting the bed during an afternoon nap. The defendant maintained throughout the trial that Chris fell from his grasp during a spanking and struck his head on a night stand and against the floor. Accord-

submitted to the jury, with the defendant's consent, as a lesser non-included offense. *See People v. Rivera*, 186 Colo. 24, 525 P.2d 431 (1974). The questions raised on this appeal center on the defendant's conviction for child abuse resulting in serious bodily injury.

ing to the defendant Chris then went into an epileptic seizure and the defendant slapped him repeatedly in order to revive him but to no avail.

The asserted errors during jury selection are tied to the court's denial of the defendant's causal challenges to two prospective jurors, Kathryn Woods and Doris Anderson. The defendant ultimately excused these jurors by peremptory challenge and expended his remaining peremptory challenges on other prospective jurors.

The claimed evidential errors relate to the following: the admission of evidence of prior acts of child abuse by the defendant toward Chris; the limitation of the defendant's cross-examination of Donna Taggart; the admission on Donna Taggart's redirect examination of testimony about a fight in which the defendant struck her; the testimony of an ambulance driver regarding a statement made to him by the defendant; the admission of photographs depicting the injuries to Chris; and the testimony of three doctors concerning the injuries inflicted on Chris. A summary of the circumstances underlying these evidential rulings will place the issues in proper focus.

*Donna Taggart's Testimony*

During Donna Taggart's direct examination the district attorney, outside the presence of the jury, advised the court that he was about to elicit from the witness evidence of prior beatings inflicted by the defendant on Chris. The stated purpose of this evidence was to establish that the defendant's actions on November 30, 1977, were part of a plan or scheme to abuse the child and that the defendant had the requisite culpability of *knowingly* causing the child to be cruelly punished. The court allowed the testimony and instructed the jury on its limited admissibility. Donna Taggart then testified before the jury about five incidents of child abuse by the defendant. The first occurred in 1976 when the defendant spanked Chris to the point where his buttocks and lower back were covered with bruises. The second incident occurred in the summer of 1977 when he hit Chris in the face for bed wetting. The last

three incidents occurred within the three weeks preceding Chris' death. On these occasions the witness observed bumps and bruises on the child's body when she returned from work or errands. The defendant on four occasions told her that he had disciplined Chris for wetting his pants, and on the other occasion the stated cause of the discipline was the child's crying.

During cross-examination of Donna Taggart defense counsel questioned her about whether she had been abused as a child and the attitude of her relatives toward her parental ability. Upon the district attorney's objection, made after the initial question had been asked and answered, the court limited further inquiry into these areas. Defense counsel also attempted to question the witness about her alleged statement to the defendant following a juvenile court proceeding involving the custody of her infant daughter, at which point the court directed counsel to avoid any reference to the specific nature of the juvenile court proceeding. The defendant claims that these limitations constitute reversible error.

In the course of further cross-examination of Donna Taggart, defense counsel inquired about an incident in which she jumped on the hood of the defendant's car during an argument in order to prevent him from driving away. The witness stated that she remembered the incident because the defendant "tore up all my plants" and damaged the house. On redirect examination the prosecutor asked her to again explain what happened during the argument and she answered "I'm not real sure what it was over, but he hit me." Defense counsel objected to this redirect examination but the objection was overruled.

*The Ambulance Driver's Testimony*

James Lloyd, an ambulance driver for Denver General Hospital, testified in the prosecution's case that on the evening of November 30, 1977, he responded to a call from a trailer court at 5225 Adams Street. Upon his arrival a woman was holding an unconscious four-year old child wrapped in a blanket. Without objection the witness

then testified that, as he was putting the child in the ambulance, "Mr. Taggart" said "Don't worry about it, it's no big deal." The defendant did not raise an objection to this testimony until the prosecution rested its case. He then unsuccessfully moved to strike it or, in the alternative, for a mistrial, on the ground the witness never made an in-court identification of the defendant as the declarant.

*Photographic Evidence and the Doctors' Testimony*

The prosecution also called three doctors who had examined Chris at various times at the hospital. Dr. Vincent Markovchick was the physician on duty in the emergency room when the child was brought there by ambulance on November 30, 1977. He testified to his examination and treatment of "Christopher Stone." He also identified three photographs as accurately depicting the nature and extent of the injuries he observed during his examination. Doctor William Meredith, an ophthalmologist, testified to his examination of "a young boy by the name of Christopher Stone" at Denver General Hospital on November 30, 1977, and the injuries he observed in and about his eyes. This witness also identified various photographs depicting the eyes of "Christopher Stone." Doctor George Ogura, a pathologist, described his post-mortem examination of "a deceased little boy identified to [him] as Christopher Stone." This witness also identified a photograph of the child. The photographs were admitted into evidence over the defendant's objections that they were inflammatory and inaccurate.

At the conclusion of the prosecution's case the defendant moved to strike the testimony of the three doctors because the prosecution failed to establish the child about whom the doctors testified was the same Christopher D. Stone alleged in the information as the victim of the offense. The defendant's motion to strike was denied.

*The Form of Verdict, Conviction and Sentence*

At the conclusion of the evidence the court submitted to the jury general verdicts of guilty and not guilty for the crime of child abuse resulting in serious bodily injury and criminally negligent homicide. The defendant made no objection to the form of the verdicts. The jury returned verdicts of guilty on both charges. The court sentenced the defendant to 20 to 25 years for child abuse resulting in serious bodily injury, and 6 months for criminally negligent homicide, to be served concurrently. The defendant now disputes the constitutional validity of the guilty verdict for child abuse and the sentence for that offense.

We first address the defendant's constitutional challenges to the statute, next the alleged errors occurring during jury selection, then the evidential issues during trial, and finally the propriety of the verdict form.

### I. The Constitutionality of Section 18–6–401

#### A. Equal Protection

The defendant claims that the child abuse statute, section 18–6–401, C.R.S. 1973 (1978 Repl.Vol. 8), violates equal protection of the laws, *U.S. Const.* Amend. XIV; *Colo.Const.* Art. II, Sec. 25,[3] because it proscribes the same conduct forbidden by the criminally negligent homicide statute, section 18–3–105, C.R.S. 1973 (1978 Repl. Vol. 8), but carries a disproportionately greater penalty. One who asserts a statute's unconstitutionality carries the burden of establishing it beyond a reasonable doubt. *E. g., Colorado Auto and Truck Wreckers Assoc. v. Dept. of Revenue*, Colo., 618 P.2d 646 (1980); *People v. Sequin*, Colo., 609 P.2d 622 (1980); *Mr. Lucky's, Inc. v. Dolan*, 197 Colo. 195, 591 P.2d 1021 (1979); *People v. Moore*, 193 Colo. 81, 562 P.2d 749 (1977); *Fry Roofing Co. v. Dept. of Health*, 179 Colo. 223, 499 P.2d 1176 (1972); *People ex rel. Dunbar v. Gym of America, Inc.*, 177 Colo. 97, 493 P.2d 660 (1972). The defendant has failed to carry that burden here.

---

**3.** The right to equal protection of the laws is included within the due process clause of the

Colorado Constitution. *E. g., People v. Max*, 70 Colo. 100, 198 P. 150 (1921).

Section 18–6–401 defines child abuse as follows:

"(1) A person commits child abuse if he knowingly, intentionally, or negligently, and without justifiable excuse, causes or permits a child to be:

(a) Placed in a situation that may endanger the child's life or health; or

(b) Exposed to the inclemency of the weather; or

(c) Abandoned, tortured, cruelly confined, or cruelly punished; or

(d) Deprived of necessary food, clothing or shelter.

"(2) In this section 'child' means a person under the age of sixteen years."

An act of child abuse resulting in serious bodily injury to the child is a class 3 felony which, on the date of this offense, carried a penalty of five to forty years. Section 18–1–105, C.R.S. 1973 (1978 Repl.Vol. 8). Criminally negligent homicide, on the other hand, is committed when a person causes the death of another by conduct amounting to criminal negligence. Section 18–3–105, C.R.S. 1973 (1978 Repl.Vol. 8). Criminal negligence, as applied to homicide, means a failure to perceive, through a gross deviation from the standard of reasonable care, a substantial and unjustifiable risk that death will result from certain conduct. Section 18–1–501(3), C.R.S. 1973 (1978 Repl.Vol. 8). Criminally negligent homicide is a class 1 misdemeanor and on the date of this offense carried a penalty of six to twenty-four months. Section 18–1–106, C.R.S. 1973 (1978 Repl.Vol. 8).

██ Criminal legislation is not invalidated simply because a particular act may violate more than one statutory provision. Rather, "[i]t is only where the *same conduct* is proscribed in two statutes, and *different criminal sanctions* apply, that problems arise under equal protection . . ." *People v. Czajkowski*, 193 Colo. 352, 356, 568 P.2d 23, 25 (1977) (emphasis added); *accord, People v. Burns*, 197 Colo. 284, 593 P.2d 351 (1979); *People v. Marshall*, 196 Colo. 381, 586 P.2d 41 (1978); *People v. Smith*, 193 Colo. 357, 566 P.2d 364 (1977); *People v. Hulse*, 192 Colo. 302, 557 P.2d 1205 (1976). The stat-

utes under consideration here do not proscribe identical conduct. The proscriptions of section 18–6–401 encompass conduct that is particularly abusive to *children*, that is directed specifically against a *child*, and that results in injury to that *child*. Criminally negligent homicide, on the other hand, proscribes in general terms a gross carelessness that causes death to *anyone*, adult or child.

██ There being differences between the two statutory offenses, the legislative classification must be upheld so long as those differences are reasonably related "to the objects or persons dealt with and to the public purpose sought to be achieved by the legislation involved." *Lee v. People*, 170 Colo. 268, 272, 460 P.2d 796, 798 (1969), quoting *Champlin Refining Co. v. Cruse*, 115 Colo. 329, 173 P.2d 213 (1946); *see Hughes v. Alexandria Scrap Corp.*, 426 U.S. 794, 96 S.Ct. 2488, 49 L.Ed.2d 220 (1976); *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *Williamson v. Lee Optical*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955); *Colorado Auto and Truck Wreckers Assoc. v. Dept. of Revenue, supra; People v. Czajkowski, supra.* We conclude that the legislature was well within its discretion in determining that the conduct encompassed by the statutory definition of child abuse in section 18–6–401 is deserving of a classification distinct from the general statutory prohibition against criminally negligent homicide. Children are much less able than adults to protect themselves from the risks of injury or death associated with the acts proscribed by section 18–6–401, and those acts are most likely to be committed by someone in a parental or custodial relationship to a child of tender years. Accordingly, the legislative classification of child abuse as a crime more serious in penalty than the offense of criminally negligent homicide is neither arbitrary nor unreasonable and does not violate equal protection of the laws.

## B. *Vagueness*

Defendant next contends that the inclusion of the words "negligently" and "may"

in the statutory definition of child abuse renders the statute unconstitutionally vague in violation of the due process clauses of the United States and Colorado Constitutions. *U.S. Const.* Amend. XIV; *Colo. Const.* Art. II, Sec. 25. The first prong of the vagueness argument professes that the culpability requirement of acting "negligently" is inconsistent with the statutory prohibition of causing or permitting a child to be "tortured" or "cruelly punished" because torture or cruel punishment implies a culpability similar to that of knowledge or intent. We are not so persuaded.

Neither scientific exactitude nor optimal lucidity of expression is required in statutory drafting. *E. g., Colorado Auto & Truck Wreckers Ass'n. v. Dept. of Revenue, supra; LDS, Inc. v. Healy,* 197 Colo. 19, 589 P.2d 490 (1979); *People v. Blue,* 190 Colo. 95, 544 P.2d 385 (1975). "Tortured" and "cruelly punished" do not refer to the *mens rea* of the crime of child abuse. Rather, these words refer to the *actus reus* as measured by the consequences wrought on the child. Thus, a person may negligently cause or permit a child to be placed in a situation so debilitating to the child's physical well-being that a reasonable juror, looking at the effect of the offender's conduct on the child, would consider it torture or cruel punishment. The term "negligently" is not irreconcilably at odds with "tortured" and "cruelly punished," and the statutory definition of child abuse is sufficiently particular to furnish adequate notice to potential wrongdoers of the proscribed conduct and to protect against discriminatory enforcement. *Colorado Auto & Truck Wreckers Ass'n. v. Dept. of Revenue, supra; LDS, Inc. v. Healy, supra; People v. Hines,* 194 Colo. 284, 572 P.2d 467 (1977); *see State v. Coe,* 92 N.M. 320, 587 P.2d 973 (1978).

The second prong of the defendant's argument is that the word "may" in subsection 18–6–401(1)(a) renders that subsection unconstitutionally vague. This aspect of the vagueness argument flies in the face of our holding in *People v. Hoehl,* 193 Colo. 557, 560, 568 P.2d 484, 486 (1977), where we construed the word "may" to mean "a rea-

sonable probability that the child's life or health will be endangered from the situation in which the child is placed."

It is an established rule of statutory construction that legislative intent is to be given effect whenever possible. *E. g., People v. Sequin, supra; Conrad v. City of Thornton,* 191 Colo. 444, 553 P.2d 822 (1976). We noted in *Hoehl* that in the absence of such restrictive construction, section 18–6–401(1)(a) would encompass virtually any conduct directed toward a child that has the possibility, however slim, of endangering the child's life or health. Our construction in *Hoehl* aligned the statute with the overriding legislative intent of prohibiting conduct that exceeds the bounds of reasonable and appropriate parental or custodial discipline, *see* section 18–1–703(1)(a), C.R.S.1973 (1978 Repl.Vol. 8), and that creates a probable endangerment to the child's life or health. Authoritative judicial construction of a statute provides sufficient notice to potential wrongdoers and guarantees against discriminatory enforcement so as to defeat a challenge of unconstitutional vagueness. *Avard v. Dupuis,* 376 F.Supp. 479 (D.N.H.1974); *Southern v. Bd. of Trustees,* 318 F.Supp. 355, (N.D.Tex.1970), *aff'd,* 461 F.2d 1267 (5th Cir. 1972); *Nightingale v. State Personnel Bd.,* 7 Cal.3d 507, 498 P.2d 1006, 102 Cal.Rptr. 758 (1972).

## II. *Voir Dire*

The defendant next asserts that the trial court's denial of his challenges for cause to two potential jurors deprived him of his constitutional right to a fair and impartial jury. *U.S.Const.* Amend. XIV; *Colo.Const.* Art. II, Sec. 16. Generally, the decision of the trial judge to deny a challenge for cause will not be disturbed on review in the absence of a manifest abuse of discretion. *See, e. g., People v. McCrary,* 190 Colo. 538, 549 P.2d 1320 (1976); *Leick v. People,* 136 Colo. 535, 322 P.2d 674, *cert. denied,* 357 U.S. 922, 78 S.Ct. 1363, 2 L.Ed.2d 1366 (1958); *People v. Romero,* 42 Colo.App. 20, 593 P.2d 365 (1978). We find no abuse of discretion in this case.

Although neither of the two potential jurors expressed an opinion that the defendant was guilty of the offense charged, they did voice some concern as to their ability to be impartial in a child abuse case. Intensive inquiry by the trial judge dispelled the jurors' initial concern about their fairness. For example, the defendant's challenge to Kathryn Woods was based on her statement that if she were the defendant she would not want someone "in [her] shoes in the jury box." In response to subsequent questioning by the trial judge she unequivocally stated that she would not allow her feelings to interfere with her duty as a juror and would adhere to principles of law in deciding the case.

The other juror, Doris Anderson, initially stated to defense counsel that photographic evidence about the child's injuries would probably affect her sense of fairness. However, upon inquiry by the court, she stated that she could and would set aside her emotions and decide the case based upon the evidence and pertinent principles of law.

The clear and unambiguous concession by both jurors that they could and would be fair and impartial clearly distinguishes this case from *Nailor v. People*, Colo., 612 P.2d 79 (1980), where after extensive voir dire the juror still harbored serious doubts about her fairness and impartiality. A strong aversion to a particular crime, such as child abuse, does not automatically disqualify a prospective juror, where, as here, the juror states that she can and will set aside her adverse feelings and decide the case based upon the evidence and the law, and the juror's statement is not otherwise impugned by the record. *Fleagle v. People*, 87 Colo. 532, 289 P. 1078 (1930); see also *People v. Buckner*, 180 Colo. 65, 504 P.2d 669 (1972).

### III. *Evidential Rulings*

#### A. *Prior Acts of Child Abuse*

Defendant argues that evidence of prior acts of child abuse was improperly admitted because the acts were not sufficiently similar to the offense charged. We conclude that this evidence was properly admitted.

Although the general rule is that evidence of prior criminal acts is not admissible because of its prejudicial effect, there are certain limited and well-defined exceptions to the rule. *E. g., People v. McKay*, 191 Colo. 381, 553 P.2d 380 (1976); *Howe v. People*, 178 Colo. 248, 496 P.2d 1040 (1972); *Kennard v. People*, 171 Colo. 194, 465 P.2d 509 (1970). One such exception is to establish the requisite criminal culpability for the crime charged by proof that the act was part of a continuing scheme and hence not the result of accident or legal justification. *E. g., People v. Hosier*, 186 Colo. 116, 525 P.2d 1161 (1974); *People v. Ellis*, 41 Colo.App. 271, 589 P.2d 494 (1978); see also 1 *C. Torcia, Wharton's Criminal Evidence* § 249 (13th ed. 1972). The crime of child abuse, as charged, requires that the act be committed either knowingly or negligently. Section 18–6–401(1), C.R.S.1973 (1978 Repl.Vol. 8). The use of reasonable and appropriate physical force is a recognized affirmative defense to the crime when it is employed by one entrusted with the care of the child for the purpose of maintaining discipline. Section 18–1–703(1)(a), C.R.S.1973 (1978 Repl.Vol..8); *People v. Hoehl, supra*. Where, as here, the evidence raises the affirmative defense of justified physical force for disciplinary purposes, the prosecution must establish the guilt of the defendant beyond a reasonable doubt as to that issue as well as all other elements of the offense. Section 18–1–407, C.R.S.1973 (now in 1978 Repl.Vol. 8).

In this case all the prior acts were committed against the same person. Each act was occasioned by normal childhood behavior on the part of the victim—bed-wetting in four instances and crying in another. Each act was similar in severity in that noticeable bruises and marks were left on the child's body. Each act took place while the child's mother was absent. Finally, each act was followed by the defendant's explanation that it was for disciplinary purposes. Under these circumstances the acts were sufficiently similar in char-

acter to be admissible for purposes of establishing criminal culpability and of negating any claim of accident or justification. *People v. Hosier, supra; People v. Ellis, supra; see also People v. Henson*, 33 N.Y.2d 63, 304 N.E.2d 358, 349 N.Y.S.2d 657 (1973).[4]

### B. The Cross-Examination of Donna Taggart

The defendant raises three claims of error in connection with the cross-examination of Donna Taggart. We find no error in the rulings of the trial court with respect to that cross-examination.

■ The defendant's initial assertion is that he should have been permitted to cross-examine this witness about whether she had been abused as a child. Defense counsel asked her on cross-examination if she had been beaten by her father and if she suffered "a bruise at his hands." The witness responded in the negative to both questions. At that point the trial court sustained the prosecutor's objection to further inquiry into this area. Defense counsel failed to show that relevant and material evidence would have been forthcoming had the trial court permitted further inquiry. Under this state of the record we cannot conclude that the trial court abused its discretion in sustaining the prosecution's objection to this line of questioning. *Wafer v. People*, 175 Colo. 332, 488 P.2d 73 (1971); *see People v. Taylor*, 190 Colo. 210, 545 P.2d 703 (1976); *People v. Williams*, 40 Colo.App. 30, 569 P.2d 339 (1977).

■ The second allegedly improper limitation on the defendant's cross-examination concerns the claimed bias of Donna Taggart toward the defendant. Defense counsel asked Donna Taggart if her mother had criticized her for her poor parental ability and the witness responded affirmatively. Defense counsel then asked Donna Taggart about her mother's criticism for other things and the court sustained the prosecu-

tor's objection on grounds of relevancy. The court advised defense counsel that inquiry on the witness' bias toward the defendant was permissible but the relevancy of the last question to the issue of bias was ·"farfetched." Defense counsel thereafter questioned Donna Taggart in detail about any prejudice she might harbor toward the defendant as a result of her family's attitude towards her. Defense counsel was also permitted to ask the witness if she told the defendant that she was acting hostilely towards him because of familial pressure directed against her. We conclude that the trial judge allowed defense counsel ample latitude in probing the witness' bias toward the defendant and committed no error in that regard. *E. g., People v. Taylor, supra; People v. Simmons*, 182 Colo. 350, 513 P.2d 193 (1973); *People v. Couch*, 179 Colo. 324, 500 P.2d 967 (1972).

■ The defendant's last claim in connection with the cross-examination of Donna Taggart concerns the court's direction to defense counsel not to refer to a juvenile court proceeding as "a juvenile court proceeding" or "a termination of parental rights case." This particular issue came up when defense counsel, over the prosecutor's objection, advised the court that she wanted to question the witness about a statement the witness made to the defendant following a juvenile court· proceeding involving custody of the witness' minor daughter. The trial court merely instructed defense counsel to exclude any reference to the character of the proceeding in questioning the witness about her purported statement to the defendant. The trial court's direction to defense counsel did not prohibit inquiry on the statement itself and, under the record here, we find no abuse of discretion in its ruling. *E. g., Vigil v. People*, 196 Colo. 522, 587 P.2d 1196 (1978); *People v. Moreno*, 192 Colo. 314, 558 P.2d 440 (1976); , *People v. Crawford*, 191 Colo. 504, 553 P.2d 827 (1976).

---

4. The prior acts were sufficiently proximate in time to meet threshold standards of admissibility. The defendant's claim of remoteness as to the 1976 beating goes to the weight of the evidence, not to its admissibility. *E. g., People v. Gladney*, 194 Colo. 68, 570 P.2d 231 (1977), *cert. denied*, 434 U.S. 1038, 98 S.Ct. 776, 54 L.Ed.2d 787 (1978); *People v. Lazare*, 189 Colo. 530, 542 P.2d 1290 (1975); *People v. Miller*, 187 Colo. 239, 529 P.2d 648 (1974).

### C. The Redirect Examination of Donna Taggart

██ The defendant argues that the trial court erred by allowing Donna Taggart to testify on redirect examination that the defendant had assaulted her approximately one year prior to the date of the offense. The record clearly reflects that defense counsel raised the matter of the assault in cross-examination of the witness, presumably for the purpose of impeaching her by demonstrating a bias against the defendant. Once the defendant had injected this matter into the trial to buttress his defense, the prosecution had the right to question the witness about the matter in an effort to dispel any unfavorable innuendo thereby cast on the witness. *See e. g., People v. Pickett,* 194 Colo. 178, 571 P.2d 1078 (1977); *Mathis v. People,* 167 Colo. 504, 448 P.2d 633 (1968); *Abeyta v. People,* 156 Colo. 440, 400 P.2d 431 (1965).

### D. The Ambulance Driver's Testimony

The defendant next challenges the trial court's denial of his motion to strike the testimony of James Lloyd, the ambulance driver. This witness testified that as he was putting the child into the ambulance "Mr. Taggart" said "Don't worry about it, it's no big deal." His motion to strike was based on the claim that the witness never made an in-court identification of the defendant as the declarant. We conclude that the trial court did not err in denying the defendant's motion to strike.

██ Defense counsel failed to object to this testimony when it was admitted in the first instance. Generally, a failure to contemporaneously object to the admission of evidence precludes appellate review of the matter unless the alleged error is so serious as to prejudice basic rights of the defendant. *See, e. g., People v. Jones,* 193 Colo. 250, 565 P.2d 1333 (1977), *appeal dismissed,* 434 U.S. 962, 98 S.Ct. 498, 54 L.Ed.2d 447 (1977); *People v. Saghy,* 190 Colo. 79, 543 P.2d 1243 (1975); *People v. Gallegos,* 181 Colo. 264, 509 P.2d 596 (1973); Crim.P. 52(b).

██ We cannot characterize the admission of the ambulance driver's testimony as fundamentally flawed. Prior to his attribution of the statement to "Mr. Taggart", the testimony of Donna Taggart had already furnished a predicate for its admission by placing the defendant at the trailer-home when the ambulance arrived to take the child to the hospital. Under these circumstances the trial court properly denied the defendant's motion to strike.

### E. The Admission of the Photographs

The defendant next argues that the trial court erred in admitting photographs of Chris because they were highly inflammatory and, in some respects, inaccurate. We do not agree.

██ The photographs fall into two distinct categories. Some were taken after Chris' death and depict the bruises and wounds on the child's body. Others taken before death depict the exterior and interior of Chris' eyes, including external bruising and internal hemorrhaging. Both categories of photographs were relevant to the nature, extent and cause of the injuries and their relevancy clearly outweighed any potential for prejudice attaching to the admission. *See e. g., People v. Glenn,* Colo., 615 P.2d 700 (1980); *People v. White,* Colo., 606 P.2d 847 (1980); *Hinton v. People,* 169 Colo. 545, 458 P.2d 611 (1969).

██ The defendant's claim of inaccuracy centers on the depiction of some skin discoloration due to post-mortem mottling and some medical treatment administered to Chris. After the photographs were admitted into evidence, the prosecution's experts pointed out to the jury that certain discolorations could not be attributed to the actions of the defendant, but were due to the mottling and treatment. With this testimonial explanation, we cannot conclude that the trial court erred in admitting them. *See Hinton v. People, supra.*

### F. The Doctors' Testimony

██ The defendant's final argument on evidential matters relates to his motion to

strike the doctors' testimony describing the injuries to the child on the ground that the child was not identified as the same "Christopher D. Stone" alleged in the information. This argument is devoid of merit.

Each doctor testified, without objection, that the child was identified as Christopher Donald Stone. Furthermore, the doctors identified the child they treated or examined as the very same child pictured in photographs that were ultimately admitted into evidence as those of the victim, Christopher D. Stone. Prior to the doctors' testimony, the child's mother, Donna Taggart, had already testified to the child's arrival at the hospital and treatment by the doctors. Her description of the physical characteristics of her child was virtually identical to those depicted in several of the photographs. Viewing the evidence in its entirety, there can be no doubt that the child examined and treated by the doctors was the same "Christopher D. Stone" alleged in the information, and the trial court did not err in denying the defendant's motion to strike the doctors' testimony.

### IV. *General Verdict*

■ The defendant's last claim of error is that the trial court's submission and acceptance of a general verdict of guilty to the crime of child abuse resulting in serious bodily injury deprived him of his right to a unanimous jury verdict. Section 16–10–

108, C.R.S.1973 (1978 Repl.Vol. 8); Crim.P. 23(a)(8); and 31(a)(3). Specifically, he attributes the infirmity to the failure of the verdict to specify the particular manner in which the crime was committed. We conclude that the defendant was not denied his right to a unanimous verdict in this case.

The court instructed the jury that a person commits the crime of child abuse resulting in serious bodily injury when, without justifiable excuse, he knowingly or negligently causes or permits the child *either* to be placed in a situation that may endanger his life or health, *or* to be cruelly punished or tortured, and serious bodily injury results to the child. "[E]vidence of any of the alternative ways that a crime can be committed will support a general verdict." *Hernandez v. People*, 156 Colo. 23, 30, 396 P.2d 952, 955 (1964); *accord, Claxton v. People*, 164 Colo. 283, 434 P.2d 407 (1967).[5]

■ The record indicates that the defendant did not object to the elemental instruction on child abuse, failed to request a special verdict, and did not assert his present challenge to the general verdict in his motion for a new trial. Under such circumstances "we are not inclined to hold that the general instruction on the necessity of unanimity was insufficient." *United States v. Pavloski*, 574 F.2d 933, 936 (7th Cir. 1978); *accord, United States v. Bolts*, 558 F.2d 316 (5th Cir. 1977), *cert. denied,*

---

**5.** The defendant relies primarily on *United States v. Gipson*, 553 F.2d 453 (5th Cir. 1977), for his argument that the general verdict deprived him of his right to a unanimous verdict. We find *Gipson* inapposite to the case here. In *Gipson* the defendant was charged with violating a statute that prohibited the receiving, concealing, storing, bartering, selling or disposing of a motor vehicle in interstate commerce with knowledge that the vehicle was stolen. The prosecutor presented evidence regarding all six prohibited acts. The trial judge specifically instructed the jury that it could find the defendant guilty without unanimously agreeing on which of the six prohibited acts he had committed. The jury returned a general verdict of guilty and the Fifth Circuit reversed, holding that the defendant's right to a unanimous jury verdict had been violated. Subsequent federal cases have found *Gipson* inapplicable where the jury is not specifically instructed on non-unanimity but is instructed on the

alternative methods of committing a crime and on the requirement of a unanimous verdict. *United States v. Pavloski*, 574 F.2d 933 (7th Cir. 1978); *United States v. Bolts*, 558 F.2d 316 (5th Cir. 1977), *cert. denied*, 439 U.S. 898, 99 S.Ct. 262, 58 L.Ed.2d 246 (1978). State courts consistently have held that unanimity is required only with respect to the ultimate issue of the defendant's guilt or innocence of the crime charged and not with respect to alternative means by which the crime was committed. *E. g., People v. Bennett*, 60 Cal.App.3d 112, 131 Cal.Rptr. 305 (1976); *Blake v. State*, 239 Ga. 292, 236 S.E.2d 637 (1977), *cert. denied*, 434 U.S. 960, 98 S.Ct. 492, 54 L.Ed.2d 320 (1977); *Wells v. Commonwealth*, Ky., 561 S.W.2d 85 (1978); *People v. Sullivan*, 173 N.Y. 122, 65 N.E. 989 (1903); *State v. Arndt*, 87 Wash.2d 374, 553 P.2d 1328 (1976); *Holland v. State*, 91 Wis.2d 134, 280 N.W.2d 288 (1979); *cert. denied*, 445 U.S. 931, 100 S.Ct. 1320, 63 L.Ed.2d 764 (1980).

**1388**

439 U.S. 898, 99 S.Ct. 262, 58 L.Ed.2d 246 (1978).

The judgment is affirmed.