The PEOPLE of the State of Colorado,
Plaintiff-Appellee,

v.

Terry Lee ABBOTT,
Defendant-Appellant.

No. 82SA550.

Supreme Court of Colorado,
En Banc.

Nov. 13, 1984.

Rehearing Denied Dec. 10, 1984.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., Robert M. Petrusak, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Linda Hotes, Deputy State Public Defender, Denver, for defendant-appellant.

ROVIRA, Justice.

Terry Lee Abbott (defendant) was convicted of eleven counts of aggravated robbery, twelve counts of second-degree kidnapping, three counts of second-degree assault, three counts of third-degree assault, and one count of criminal trespass. He claims that the trial court erred in denying several challenges for cause during jury selection, in excusing a juror during the

trial, in refusing to grant a mistrial because of a statement by a prosecution witness, and in refusing to grant his motion for judgment of acquittal on the kidnapping charges. He also claims that section 18–1–105(6), 8 C.R.S. (1978 & 1983 Supp.), is unconstitutional because it fails to specify guidelines to be used by a court when it imposes a sentence beyond the presumptive sentencing range,[1] or, alternatively, that even if section 18–1–105(6) is constitutional, the trial court erred in sentencing the defendant outside the presumptive range. We affirm.

I.

The charges against the defendant arose out of the robbery of a King Soopers grocery store on March 21, 1980. The prosecution's evidence established that at approximately 1 a.m. on that date three armed men entered the rear storage area of the store. Each of the gunmen wore a mask, but was distinguishable from the others by physique, clothing, and weapons carried. One gunman was stocky, wore a brown jogging suit, and carried an automatic pistol. Another was short and of medium build, wore a green army jacket, and carried a .38 caliber revolver. The third man was tall and slender, wore bluish clothing and blue shoes, and carried a long barreled revolver. This man was identified as the defendant.

After the robbers entered the building, they ordered the thirteen employees into a back room and forced them to lie face down on the floor. After being told by the store manager that the safe could not be opened because it was operated by a time lock, the robbers proceeded to take money from the store register as well as money and jewelry from the individual employees. As the employees were being robbed, they were hit or kicked by at least one of the robbers, and several suffered physical injury as a result. During the time these events were taking place, another employee arrived at

---

1. We accepted jurisdiction of this case because of defendant's assertion that section 18–1–105(6), 8 C.R.S. (1978 & 1983 Supp.), is unconstitutional. *See* § 13–4–102(1)(b), 6 C.R.S. (1973).

the store and observed the robbery taking place. He immediately left and notified the police.

After the gunmen robbed the employees, they discussed what to do next, including what should be done with the employees. The manager of the store, Sam Booras, suggested that the employees should be put into a trailer which was located at a loading dock outside the back room. The employees were then forced to crawl into the trailer, instructed to lie face down, and the trailer door was closed. At this time, the police arrived. One of the gunmen was shot after pointing his weapon at the police. The wounded gunman and the defendant were arrested inside the store within minutes after the police arrived.

## II.

The defendant argues that the trial court's denial of his challenges for cause to four potential jurors deprived him of his constitutional right to a fair and impartial jury. U.S. Const. amend. XIV; Colo. Const. art. II, § 16. The decision of a trial judge, in denying a challenge for cause, will be upheld unless a gross abuse of discretion is demonstrated. *People v. Taggart*, 621 P.2d 1375, 1383 (Colo.1981); *People v. McCrary*, 190 Colo. 538, 547, 549 P.2d 1320, 1327 (1976); *Leick v. People*, 136 Colo. 535, 545, 322 P.2d 674, *cert. denied*, 357 U.S. 922, 78 S.Ct. 1363, 2 L.Ed.2d 1366 (1958).

Here the four potential jurors underwent an extensive *voir dire* by counsel and the court. The first juror who the defendant contends should have been excused for cause was Wilma Sprague. Sprague stated that in 1960 her family owned several stores, one of which was robbed at gunpoint. She also informed the court that her home had been burglarized, that her mother had once been accosted by an armed juvenile, and that in the late sixties a ranch she and her husband owned had been guarded by agents of the Federal Bureau of Investigation because of a sale of horses to persons who were later charged and convicted of a crime.

In response to questions by defense counsel and the court, Sprague said that she would follow the instructions of the court and be a fair and impartial juror. The defendant challenged Sprague for cause. The trial court denied the challenge, and the defendant exercised his second peremptory challenge to excuse the juror.

The second juror was Judith Smith. Smith stated she didn't like guns, wouldn't allow her children to play with guns, and favored stricter gun control. In response to a question by defense counsel as to whether she thought it would be fair to a defendant to have "twelve jurors of your frame of mind on guns sitting on a case" that would involve guns, Smith responded, "No." However, she later stated that she would follow the instructions of the court, try her best to put aside any feelings she had about guns, and be a fair and impartial juror. The defendant challenged the juror for cause, and the challenge was denied.

The third juror, Roslyn Schafer, stated that she planned to move to Ohio in approximately two weeks. Under questioning by defense counsel, Schafer admitted to being concerned about the details of the move and the effect it would have on her ability to concentrate on the trial. The next day defense counsel resumed questioning of Schafer. In response to counsel's question as to whether jury service would be a hardship, she stated: "Like everyone else it is not really the right time. The same thing that I said yesterday, as far as concentrating I hope I can but I can't say definitely just because I know there are a lot of things to think about right now, especially if [the trial] goes to next weekend." Counsel's last question was: "Would it be fair to say this: You're willing to give us the time, you are willing to serve if you are asked but there is some doubt in your mind as to whether you could give it your complete attention?" In response, Schafer replied: "That's about it, . . . ." The defendant's challenge for cause was denied.

The fourth juror was Mary Nims. During *voir dire*, Nims admitted reading about

the robbery and forming an opinion that the robbery had taken place. She further stated that she was appalled by this kind of robbery, but had no opinion as to whether the defendant was guilty or innocent. The defendant challenged Nims for cause. The challenge was denied.

Additional questions of Nims established that her home and hotel room had been burglarized on several occasions. However, she was of the opinion that she would be fair and impartial. A renewed challenge for cause was denied, based on the court's opinion that the juror's answers reflected that she could be fair and impartial. Nims was seated as the first alternate juror, the defendant having exhausted all of his peremptory challenges.[2]

The defendant argues that Sprague should have been excused for cause because the cumulative effect of her experiences with robberies would make it difficult for her to be an objective juror. He also claims that Smith should have been excused because her strong feelings against guns might affect her ability to be fair. Although the defendant did not expressly state any grounds to the trial court as to why Schafer should be excused, he now argues that his challenge for cause should have been granted because of Schafer's doubt about her ability to concentrate due to her pending move. Furthermore, the defendant contends that Nims should have been excused because of her opinion that the robbery had taken place, and because she had been the victim of five burglaries.

■ There can be no doubt that a defendant accused of a crime has a fundamental right to a trial by jurors who are fair and impartial. The responsibility of assuring that the jurors selected meet this standard is, in the first instance, vested in the trial judge: "It is the trial court which hears the questions put to the juror and the answers given, observes the juror's demeanor while being questioned, and discerns the truthfulness, the sincerity, and

the dedication to the high responsibility involved in being a fair and impartial juror." *People v. McCrary,* 190 Colo. 538, 547–48, 549 P.2d 1320, 1327–28 (1976). The trial judge's decision to deny a challenge for cause will not be disturbed on appeal in the absence of a gross abuse of discretion. *See, e.g., People v. Taggart,* 621 P.2d 1375, 1383 (Colo.1981).

■ In determining whether the trial judge grossly abused his discretion, the entire *voir dire* examination of the potential juror must be reviewed. The test to be used in determining whether a juror should be excluded is "whether [the juror] would render a fair and impartial verdict based on the evidence presented at trial and the instructions given by the court." *People v. Wright,* 672 P.2d 518, 520 (Colo.1983). The fact that some evidence arose during *voir dire* which might indicate that the potential juror is prejudiced does not necessitate excusing him when challenged for cause. *See People v. Taggart,* 621 P.2d 1375 (Colo. 1981) (strong aversion to a particular crime does not automatically disqualify a prospective juror); *People v. Ward,* 673 P.2d 47 (Colo.App.1983) (no abuse of discretion in denying challenge for cause in an aggravated robbery case where potential juror admitted he had bias against handguns, had a brother-in-law who had been shot in a robbery, and had stated at one point during *voir dire* that he was uncertain of his ability to remain impartial).

■ Facts which indicate a possibility of bias must be considered along with facts which indicate impartiality. A juror's assurance of impartiality is one factor which supports denial of a challenge for cause. *See Taggart,* 621 P.2d at 1384; *Beeman v. People,* 193 Colo. 337, 565 P.2d 1340 (Colo. 1977). Another factor to be considered is whether the juror reveals any enmity or bias toward the defendant or the state. *See People v. Ward,* 673 P.2d 47, 49 (Colo. App.1983).

2. In his brief, the defendant claims that a request was made for an additional peremptory challenge in order to excuse Nims. Our examination of the record discloses no such request.

■ Having reviewed the entire *voir dire* examination of the four potential jurors, we conclude that the trial court did not abuse its discretion. Although Sprague and Nims had directly or indirectly been the victims of a crime, they revealed no enmity or bias toward the defendant, and each of them expressed an understanding of the principles upon which a fair trial is based. In addition, contrary to the situation in *Nailor v. People*, 200 Colo. 30, 612 P.2d 79 (1980), where the juror doubted she could be fair because of her recent "bad experience," Sprague and Nims expressed no reservation about their ability to set aside their own experiences and to be fair to both the defendant and the state. Furthermore, although Smith expressed a bias against guns, she revealed no enmity or bias toward the defendant, and stated that she could and would set aside her feelings and decide the case based upon the evidence and the law.

The challenge for cause of Schafer does not merit extended discussion. This juror was understandably concerned with her family's needs and her impending move. However, no response was elicited from her which would indicate enmity or bias to the defendant, reluctance to base her decision on the law and the evidence, or overwhelming outside pressures which would totally preoccupy her thoughts. *Cf. Moore v. State*, 542 S.W.2d 664 (Tex.Crim.App. 1976) (no abuse of discretion in excusing a juror who stated that her financial situation was such that all she could think about was how she was going to pay the bills and that she didn't think she could be a fair juror).

Our review of the record convinces us that the trial judge did not abuse his discretion in denying the defendant's challenges for cause.

### III.

The defendant contends that his conviction should be reversed because the court excused Peter Dunkle, who was serving as a juror. During the presentation of the People's case, the trial judge ordered a short recess and called Dunkle into his chambers. The court advised Dunkle that a message had been received that his wife had been admitted to the hospital and that a friend of his wife would be by the court within half an hour to pick him up. The court then excused Dunkle from further service in order for him to go to the hospital.

After Dunkle left, defense counsel stated that there was no showing that the juror could not have handled the matter by a phone call or that the hospital admission was other than a routine matter. She also objected to having the first alternate, Mary Nims, replace Dunkle, and requested the court to substitute the second alternate juror instead. This request was denied.

The defendant now claims that since he was deprived of the particular jury which had been selected to try the case, and since the first alternate had replaced an excused juror, he was deprived of his constitutional right to a fair and impartial jury. We disagree.

Section 16–10–106, 8 C.R.S. (1978), states in part that "Where a jury of twelve has been sworn to try the case, and any juror by reason of illness or other cause becomes unable to continue until a verdict is reached, the court may excuse such juror."

If alternate jurors are seated, then section 16–10–105, 8 C.R.S. (1978), requires that: "Alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury retires to consider its verdict, become unable or disqualified to perform their duties."

■ The purpose of seating an alternate juror is to have available another juror when, through unforeseen circumstances, a juror is unable to continue to serve. The trial court is in the best position to evaluate whether a juror is "unable" to serve, and its decision to excuse a juror will not be disturbed absent a gross abuse of discretion. *See United States v. Dominguez*, 615 F.2d 1093 (5th Cir.1980) (in interpreting Fed.R.Crim.P. 24(c), 18 U.S.C. § 24(c), identical, in pertinent part, to section 16–10–

105, the court held that it is within the trial court's sound discretion to remove a juror whenever the judge becomes convinced that the juror's ability to perform his duties has been impaired).

■ The record does not demonstrate an abuse of discretion in excusing Dunkle. Furthermore, the trial court followed the mandate of section 16–10–105, 8 C.R.S. (1978), when it refused to replace the excused juror with the second alternate instead of the first alternate. Therefore, the defendant's claim that the trial court erred in excusing juror Dunkle, and in substituting the first alternate juror, must fail.

## IV.

The defendant also contends that the trial court erred in refusing to grant a mistrial. The defendant's motion for mistrial was based upon the testimony of Grayton Sanders, an employee of King Soopers. At trial the prosecutor showed Sanders a number of photographs which had previously been shown to the witness by the defendant's investigator, and from which the witness had picked the defendant's picture as being "familiar" based upon profile. The prosecutor asked, "Who were the photographs of? What type of people?" Sanders replied, "Criminals." The defendant made no objection. However, during a recess following Sanders' testimony, the defendant requested a mistrial based upon Sanders' testimony. The defendant argues that by referring to the individuals in the photographs as criminals, the witness insinuated that the defendant had a criminal record.

■ In general, evidence of an accused's prior criminal acts is inadmissible. *Hollis v. People*, 630 P.2d 68 (Colo.1981). However, a mistrial is the most drastic of remedies. *People v. Anderson*, 184 Colo.

32, 36, 518 P.2d 828, 830 (1974). The trial court has broad discretion to grant or deny a mistrial, and its decision will not be disturbed on appeal absent gross abuse of discretion and prejudice to the defendant. *People v. Hodges*, 624 P.2d 1308, 1311 (Colo.1981). Furthermore, a mistrial is only warranted where the prejudice to the accused is too substantial to be remedied by other means. *People v. Smith*, 620 P.2d 232 (Colo.1980).

■ The defendant did not object to the answer at the time it was given, did not move to strike the answer, and did not request the court to instruct the jury to disregard it. When an accused believes he is prejudiced by an unresponsive answer,[3] he must take at least one of these steps. *See Bulger v. People*, 60 Colo. 165, 170, 151 P. 937, 939 (1915).

■ Furthermore, the mere reference to an accused's past criminal act is not *per se* prejudicial, requiring a new trial. *See People v. Lowe*, 184 Colo. 182, 189, 519 P.2d 344, 347–48 (1974). The circumstances of each case must be reviewed to determine the prejudice to the defendant. *See Lowe* at 189, 591 P.2d at 348. Here, the reference to past criminal acts was a single unelicited remark. No details of any past crimes were discussed, and the statement was not, in any manner, highlighted before the jury. Under the circumstances presented here, the trial court did not err in denying the motion for a mistrial.

## V.

■ The defendant, relying on *People v. Bridges*, 199 Colo. 520, 612 P.2d 1110 (Colo.1980), contends that the trial court erred in failing to grant his motion for judgment of acquittal as to the second-degree kidnapping counts because the move-

---

**3.** The answer by the witness was unresponsive. No claim of prosecutorial misconduct has been made. There is no evidence that the prosecutor elicited or anticipated the witness' response. The prosecutor claims he was attempting to get the witness to describe the race of the individuals in the pictures. This claim is supported by the record:

Q. Who were the photographs of? What type of people?
A. Criminals.
Q. No, who were the photographs of, as far as race?
A. Oh, black.

ment of the employees was merely incidental to the robbery. The defendant's reliance on *Bridges* is misplaced. In *Bridges* the defendant had been convicted of first-degree sexual assault, first-degree kidnapping, and robbery. We affirmed the judgment of the trial court on the first-degree sexual assault and robbery, and reversed the judgment on the first-degree kidnapping. The reversal was based on the finding that the movement of the victim was incidental to the underlying charge of robbery. However, the "incidental movement test" is applicable only to first-degree kidnapping. *Bridges*, 612 P.2d at 1116 n.18. The defendant in the present case was charged with second-degree kidnapping, and thus, "only movement of the victim from one place to another was required." *Id.; see also Yescas v. People*, 197 Colo. 379, 593 P.2d 358 (1979); *People v. Apodaca*, 668 P.2d 941, 945–46 (Colo.App.1982). It is undisputed that the victims were moved from one place to another. When the defendant first entered the back of the King Soopers store, only two employees were in the back room. The other eleven employees were forced to move into the back room. Furthermore, all thirteen victims were forced to move from the back room into the trailer.[4]

The trial court did not err in denying the defendant's motion for judgment of acquittal on the second-degree kidnapping counts.

### VI.

■■■ The defendant also contends that section 18–1–105(6), 8 C.R.S. (1978 & 1983 Supp.), is unconstitutionally vague because it does not set out standards to guide the trial court in deciding whether "extraordinary aggravating circumstances" exist. We addressed this precise issue in *People v. Phillips*, 652 P.2d 575 (Colo.1982), and held that this section was not unconstitutionally vague. The defendant raises no new grounds to support his challenge of vagueness, and thus, following *Phillips*, his constitutional challenge fails.

### VII.

Finally, the defendant contends that even assuming section 18–1–105(6), 8 C.R.S. (1978 & 1983 Supp.), is constitutional, the trial court erred in imposing a sentence outside the presumptive range. Section 18–1–105(1)(a), 8 C.R.S. (1978 & 1983 Supp.), establishes a presumptive range of sentencing for each of the five classes of felonies. However, section 18–1–105(6) allows the trial court to sentence outside the presumptive range if "it concludes that extraordinary mitigating or aggravating circumstances are present."

■■■ The trial court found that extraordinary aggravating circumstances were present and, pursuant to section 18–1–105(6), imposed a sentence greater than that established by the presumptive range.[5] In its findings of fact, the trial court noted the following evidence of extraordinary aggravating circumstances: the defendant had prior felony and misdemeanor convictions, including convictions involving possession of a deadly weapon; several persons had been injured during the robbery; and he had demonstrated, by his cruel and inhumane treatment of the victims, that he totally and completely disregarded their lives and safety. The defendant contends

---

4. The defendant suggests that this movement does not constitute asportation because Manager Booras suggested the move. Booras made this suggestion out of fear of harm to himself and his co-workers. Under these circumstances, the fact that the move occurred pursuant to Booras' suggestion does not absolve the defendant of the asportation. *Coleman v. State*, 264 Ind. 64, 339 N.E.2d 51, 54–55 (1975).

5. Among other offenses, the defendant was convicted of eleven counts of aggravated robbery. Aggravated robbery is a class three felony. Sec-

tion 18–4–302(3), 8 C.R.S. (1978). A class three felony has a presumptive range of four to eight years. Section 18–1–105(1)(a), 8 C.R.S. (1978 & 1983 Supp.). The trial court sentenced the defendant to ten years on the first count of aggravated robbery, and imposed the same sentence, to run concurrently, on the remaining counts. Although the sentence was greater than the presumptive range, it was within the range allowed when extraordinary aggravating circumstances are present. Section 18–1–105(6), 8 C.R.S. (1978 & 1983 Supp.).

that these facts do not amount to extraordinary aggravating circumstances. We disagree.

First, the facts relied on by the trial court are amply supported by the record. The defendant has prior felony and misdemeanor convictions. His juvenile record includes: first-degree robbery, stealing a motor vehicle, second-degree burglary, and stealing. His adult record includes convictions of armed robbery, carrying a concealed weapon, and simple battery. Furthermore, while the defendant was out on bond in the present case, he was again arrested for committing aggravated robbery and second-degree kidnapping. He pleaded guilty to second-degree kidnapping.

The defendant injured several persons during the robbery. During much of the episode, he had his revolver in a cocked, "hair-trigger" position. He also increased the obvious dangers by "pistol-whipping" victims while the revolver was cocked. At one point, the revolver went off close to a victim's head when the defendant clubbed the victim with the revolver.

Second, the facts relied on by the trial court are appropriate to consider in determining whether extraordinary aggravating circumstances exist. A defendant's prior criminal record is an appropriate factor. *Flower v. People*, 658 P.2d 266, 268 (Colo.1983); *People v. Phillips*, 652 P.2d 575, 578 (Colo.1982); *People v. Lopez*, 640 P.2d 275, 278 (Colo.App.1982); *People v. Gonzales*, 44 Colo.App. 411, 412, 613 P.2d 905, 906 (1980). The fact that the defendant injured several persons and showed disregard for their lives and safety is also relevant because the defendant's treatment of the victims is part of a "pattern of conduct which indicates whether he is a serious danger to society." *Phillips*, 652 P.2d at 580.

Since the facts relied on by the trial court are amply supported by the record, are appropriate considerations, and are clearly demonstrative of extraordinary aggravating circumstances, the trial court did not err in imposing a sentence greater than the presumptive range.

The judgment of the trial court is affirmed.