The PEOPLE of the State of Colorado,
Plaintiff-Appellee,

v.

Juan Gilbert NUNEZ,
Defendant-Appellant.

No. 82CA0374.

Colorado Court of Appeals,
Div. I.

April 26, 1984.

Rehearing Denied June 7, 1984.

Certiorari Denied June 18, 1984.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Patricia A. Wallace, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Claire Levy, Deputy State Public Defender, Denver, for defendant-appellant.

BERMAN, Judge.

Defendant, Juan Nunez, appeals his conviction of aggravated robbery and of a crime of violence. We affirm.

This case concerns the June 27, 1980, robbery of the Leprino family in their home in Golden. On that evening, two men gained entry to the Leprino home by representing themselves as government census takers. A third man, later identified as defendant, was seen carrying a "U.S. Cen-sus" shoulder bag, walking back and forth on the sidewalk in front of the house.

After the two men had asked Mr. Leprino a few census questions, one of the men left the house, indicating that he had to tell his colleague outside (the defendant) to go to another address. Less than a minute later, that man and the defendant "burst in" the house, produced a gun, and ordered the Leprinos to lie down on the floor. The men then tied up Mr. and Mrs. Leprino, their 18-year-old son, and their 13-year-old daughter, and threatened to kill them if they opened their eyes.

For longer than one hour, the men robbed the home of some $250,000 worth of silverware and jewelry and ransacked and destroyed much of what they did not take, pausing only to phone "New York" occasionally in order to locate various other items which they believed to be in the residence, but which they could not find. Near the end of the robbery, the defendant and his confederates took the Leprino family and a 14-year-old girl who had been visiting the Leprino's daughter, to the basement and locked them in the bathroom. About ten minutes after Mr. Leprino perceived that the plunderers had vacated his home, he untied himself and the others and phoned the sheriff.

On November 12, 1980, Mr. Leprino identified defendant from a photographic lineup of about eight photos. The following day, Leprino's son "tentatively identified" defendant from a photographic display. On November 20, 1980, both Leprino and his son identified the defendant from a physical lineup of six persons.

On December 11, 1981, defendant was convicted by a jury of aggravated robbery and of a crime of violence. Thereafter, he was sentenced to 16 years imprisonment.

I.

Defendant's first contention is that the trial court erred in denying his motion for mistrial. That motion was based on a witness' response in the prosecution's redirect examination to the effect that she was

promised nothing more than "around the clock protection before and after this trial" in exchange for her testimony. We find no error in denial of the motion.

■■■ "A mistrial is the most drastic remedy for prejudicial conduct." *Massey v. People*, 649 P.2d 1070 (Colo.1982); *People v. Norwood*, 37 Colo.App. 157, 547 P.2d 273 (1975). The grant or denial of a mistrial is within the sound discretion of the trial court and will not be disturbed on appeal absent a gross abuse of discretion prejudicing the defendant. *Massey v. People, supra; Hamrick v. People*, 624 P.2d 1320 (Colo.1981).

■■■ A defendant has the right in cross-examination to impeach a witness' credibility by inquiring into the nature of any prosecutorial promises or deals motivating the witness to testify against the defendant. *People v. Pate*, 625 P.2d 369 (Colo.1981); *People v. Peterson*, 633 P.2d 1088 (Colo.App.1981), *aff'd in part, rev'd in part on other grounds*, 656 P.2d 1301 (Colo.1983). However, the People also have a correlative right on redirect examination to question the witness about the matter of promises or deals in an effort to dispel any unfavorable innuendo cast on the witness by defendant's cross-examination. *People v. Taggert*, 621 P.2d 1375 (Colo.1981). Indeed, the People's right to rebut any unfavorable inferences drawn from cross-examination impeaching a witness on the basis of bias is an "unqualified right." *Abeyta v. People*, 156 Colo. 440, 400 P.2d 431 (1965).

Here, the record shows that defense counsel repeatedly questioned the witness as to whether she was receiving any "deals" in exchange for her testimony. Defense counsel's questions implied a motive on the part of the witness to testify against the defendant in order to aid her husband, a co-defendant who had previously been tried, convicted, and sentenced to 16 years imprisonment in connection with the Leprino burglary.

In *People v. Jones*, 193 Colo. 250, 565 P.2d 1333 (1977), *appeal dismissed*, 434 U.S. 962, 98 S.Ct. 498, 54 L.Ed.2d 447 (1977), our Supreme Court specifically found "no error" in the trial court's admission of a prosecution witness' testimony concerning her fear of a defendant. The Court based this holding on the fact that "[t]he district attorney elicited the subject testimony on redirect examination to counter defense counsel's cross-examination on the witness' possible bias ...." It went on to state: "Moreover, the defendant did not object contemporaneously and thereby has waived his right to have this issue considered on appeal ...." But this additional statement does not invalidate the Court's earlier holding that such rebuttal evidence of a witness' fear of defendant is admissible to respond to a defendant's innuendos of the witness' bias against him.

■■■ We conclude that defense counsel "opened the door" to both the prosecution's redirect question and to its response by inquiring into the matter of promises made to the witness by the prosecution. Given this fact, the trial court did not abuse its discretion in denying defendant's motion for mistrial. Moreover, defendant's claims of prejudice are minimized by the fact that the prosecution did not mention the witness' testimony concerning the promise of protection in his closing arguments.

## II.

Defendant's second argument is that his conviction should be reversed because, he alleges, he was denied due process of law when the trial court denied his motion to suppress the victims' pretrial and in-court identification of him and because the photographic lineup display at issue was lost after defendant's conviction and before transmission of the record to this Court. We disagree.

■■■ We agree with both defendant and the trial court that the test to be applied in determining the admissibility of identification testimony is:

"whether, in the totality of the circumstances, the [procedure] was so unnecessarily suggestive and conducive to irreparable mistaken identification that it

should be excluded.... The People must demonstrate by clear and convincing evidence that no IMPERMISSIBLE suggestion was present."

*People v. Roybal,* 43 Colo.App. 483, 609 P.2d 1110 (1979) (emphasis in original); *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).

Here, at the conclusion of the hearing on defendant's motion to suppress, the trial court found as follows. Mr. Leprino and his son were individually shown a photo array of eight Hispanic males, who had generally similar appearances. Both were told that the photographs might or might not contain a picture of the perpetrator. The sequential order of the photographs was rearranged after they were viewed by Mr. Leprino and before they were seen by his son. Both Leprinos identified defendant. Neither was told whether his choice was correct.

Approximately one week later, Mr. Leprino and his son viewed a physical lineup of six Hispanic males, who also had generally similar appearances. Defendant, who was the only individual to appear both in the photo array and the physical lineup, was represented by counsel. The Leprinos did not discuss the lineup while it was in process, nor while individually marking the lineup identification cards. They were told to make an identification only if they were positive. Mr. Leprino and his son identified defendant.

■ The trial court found that both the photo array and the physical lineup were not suggestive. Specifically, the court held that, although defendant was the only individual out of the eight persons pictured in the photo array and the six persons in the physical lineup who appeared in *both* the photo array and physical lineup, this fact alone did not make the procedure "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States, supra.* We agree.

■ Moreover, whether or not the procedures used were impermissibly sug-gestive, an in-court identification will be suppressed only if there is not a source independent of the procedures for an identification. *People v. Naranjo,* 200 Colo. 11, 612 P.2d 1106 (1980). The criteria used to determine whether an independent source for the witnesses' identification exists are:

"The opportunity at the time of the crime to view the perpetrator, the degree of attention of the witness, the extent to which the prior description fits the defendant, the level of certainty indicated by the witness at the pretrial identification, and the length of time between the crime and the trial." *People v. Naranjo, supra.*

■ Here, we agree with the trial court's finding that an independent source for the witnesses' in-court identification existed. For both Mr. Leprino and his son had the opportunity to view the defendant clearly for several minutes walking back and forth across the front yard before he entered the house. Mr. Leprino testified that he watched the defendant from approximately 35 feet through a picture window. The son testified that he saw the defendant through the same window from a distance of 10 to 15 feet. Both Leprinos stated that they were positive the defendant was the man that they saw. Both Leprinos further testified that their identification of defendant at the hearing on the motion to suppress was based on viewing him on the evening of the crime.

Viewed in the totality of the circumstances, we agree with the trial court that the identification procedures used were neither "unnecessarily suggestive" nor "conducive to irreparable mistaken identification." Furthermore, we agree that there was an independent source for the witnesses' in-court identification. Therefore, defendant was not denied due process of law and the trial court did not err in denying defendant's motion to suppress.

Finally, since the photographic lineup exhibit at issue was filed with this Court on March 29, 1983, *after* defendant's opening

brief was filed, the issue of loss of the exhibit addressed in that brief is moot.

Judgment affirmed.

PIERCE and METZGER, JJ., concur.