The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Waller S. DUNCAN, Jr., Defendant–Appellant.

No. 86CA0005.

Colorado Court of Appeals, Div. I.

March 31, 1988.

Rehearing Denied April 14, 1988.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Robert M. Petrusak, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Thomas R. Williamson, Deputy State Public Defender, Denver, for defendant-appellant.

CRISWELL, Judge.

The defendant, Waller S. Duncan, Jr., appeals the judgment of conviction entered on a jury verdict finding him guilty of two counts of aggravated robbery. We affirm.

Two drug stores in Wheat Ridge, Master Drug and Wadsworth Drug, were robbed three days apart, the first on March 8 and the second on March 11, 1985. On the same day as the robbery at Wadsworth Drug, the Aladdin Pharmacy in Denver was the subject of an attempted robbery. In each case, the robber wore a wig, carried a small pistol, and was described as tall and slender. In the Wadsworth Drug robbery, a witness saw the robber escape in a car that had a license plate starting with the letters "ZAB." A witness at the Aladdin incident chased the robber to a car bearing the license plate "ZAB 686," in which the robber then escaped.

At trial, an employee of a car rental agency testified that she had rented a 1984 Oldsmobile bearing Colorado license plate "ZAB 686" to a person who presented a Colorado driver's license in the name of Waller Stone Duncan, Jr. Her records indicated that this occurred on March 1, 1985, and that the rental agreement indicated that the car was due back by March 8. She was unable to say when or by whom the car was returned.

## I

Defendant contends that certain procedures used by investigating officers to establish the identity of the robber were impermissibly suggestive. Two different photo arrays, each containing photos of six individuals, were shown to witnesses about two weeks apart. Defendant was the only person whose picture appeared in both arrays, and it was in the same position in both, although different photos of defendant were used in each array. Defendant asserts that evidence of these out-of-court identifications, as well as the in-court identification by one witness who had viewed both photo arrays, should have been excluded at trial. We disagree.

We do not view the fact that defendant's photograph appeared in both arrays, in and of itself, to be impermissibly suggestive. *See People v. Nunez*, 684 P.2d 945 (Colo.App.1984). This is particularly true here inasmuch as defendant appeared clean-shaven in one photograph and wore a beard in the other.

Further, our review of this record, including the two arrays, convinces us that there is substantial evidentiary support for the trial court's conclusion that the identification procedure used was not unduly suggestive. Under such circumstances, that determination is binding. *See Goodwin v. District Court*, 196 Colo. 246, 586 P.2d 2 (1978).

## II

Defendant next argues that the trial court committed reversible error in admitting evidence concerning the attempted robbery at Aladdin Pharmacy. This evidence was offered to show common scheme, plan, or design, and modus operandi in order to establish identity.

Although evidence of an accused's prior criminal acts is generally inadmissible, *People v. Abbott*, 690 P.2d 1263 (Colo. 1984), CRE 404(b) does authorize the admission of such evidence under certain circumstances. Such evidence must be offered for a valid purpose, be relevant to a material issue in the case, and have a probative value in excess of the prejudice defendant may suffer from its admission. *People v. Honey*, 198 Colo. 64, 596 P.2d 751 (1979). Further, the fact that defendant was the perpetrator of the other offense must be shown by clear and convincing evidence. *People v. Botham*, 629 P.2d 589 (Colo.1981).

Defendant contends that, because the witness from the Aladdin Pharmacy incident was not able to identify him at trial, his identity as the perpetrator in that incident was not established by the requisite standard. Again, we disagree.

The People produced evidence that the witness to the Aladdin incident, who was unable to identify defendant at

trial, had, nevertheless, selected his photograph from an out-of-court array, and defendant does not suggest that this identification was tainted. Such extrajudicial identification of a defendant is admissible as an exception to the hearsay rule, and is substantive evidence of the defendant's identity. *People v. Howard*, 198 Colo. 317, 599 P.2d 899 (1979). Such evidence, being sufficient to convict on a charged offense, is "clear and convincing" for an uncharged offense under the *Botham* test. Thus, admission of the evidence concerning the Aladdin incident was relevant to the issue of the defendant's identity, and the court committed no error in admitting it.

## III

Defendant also claims the court erred by sentencing him in the aggravated range to a term of twenty-four years on each of the two convictions, to be served concurrently. He asserts that the People failed to prove by competent evidence that he was on parole at the time of the commission of these offenses, and thus, his claimed status could not be a mandatory sentence enhancer under § 18–1–105(9)(a)(II), C.R.S. (1986 Repl. Vol. 8A). He also argues that the court improperly considered elements of the offenses themselves as aggravating factors. We disagree with these assertions.

### A

Defendant does not claim that the People did not give him notice of their intention to have his sentence enhanced because of his status as a parolee. In the presentence report that was provided to him, detailed information respecting his parole status, including the date, location, and nature of the offenses charged, as well as the disposition and sentence imposed upon him, which resulted in his being placed on parole, was set forth. He does not challenge the accuracy of this information. However, he did object to the court's consideration of that information because he claimed that, the presentence report being hearsay, its contents were not competent to establish his parolee status.

In *People v. Lacey*, 723 P.2d 111 (Colo. 1986), the trial court likewise relied on similar information contained within a presentence report to. enhance the sentence imposed upon the defendant. The supreme court held that, absent a defendant's contest of his status, there is no requirement for the People to prove that status by competent evidence. In our view, the principle enunciated in *Lacey* is equally applicable here.

Under *Lacey*, if a defendant is provided with notice of the specific facts relied upon to establish his status, there need be no further proof of that status adduced, unless the defendant raises an issue as to the accuracy of the supporting factual allegations. Here, while defendant objected to the court's consideration of the information because it was hearsay, he made no objection to its accuracy. Under these circumstances, the court did not commit error by relying upon the information contained within the presentence report to conclude that defendant was a parolee at the time of the offense and in enhancing his sentence as a result of that status.

### B

While an element of an offense may not in itself be relied upon to impose an extraordinary aggravated sentence, *see* *People v. Russell*, 703 P.2d 620 (Colo.App. 1985), sentencing is a discretionary function and requires the weighing of various factors. *Flower v. People*, 658 P.2d 266 (Colo.1983).

The record here indicates that the discretionary aspect of the sentencing decision was based not upon elements of the offenses themselves, but upon defendant's lengthy criminal history and the threat to society presented by his long-term patterns of criminal and drug-related conduct. Thus, the sentence imposed was within the discretion of the court.

The judgment of conviction and the sentences imposed are affirmed.

PIERCE and HUME, JJ., concur.