The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Ricardo ROYBAL, Defendant–Appellant.
No. 86CA0492.

Colorado Court of Appeals,
Div. V.

April 20, 1989.
Rehearing Denied May 25, 1989.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Robert M. Petrusak, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Neil MacFarlane, Denver, for defendant-appellant.

HUME, Judge.

Defendant, Ricardo Roybal, appeals judgments of conviction entered on jury verdicts finding him guilty of first degree sexual assault and aggravated robbery and adjudging him an habitual offender. He asserts that the court erred in admitting evidence of his identification by the victim, in admitting evidence which implied his misconduct unrelated to the charged offenses, in denying his motion for mistrial because of alleged prosecutorial misconduct, and in refusing to suppress the use of a prior conviction to support the habitual criminal charge and the resulting sentence. He also claims that the court erred in denying his motion for new trial based upon his claim of ineffective assistance of counsel. We affirm.

## I.

Defendant first contends that the court erred in refusing to suppress evidence of his identification by the victim, urging that her identification was tainted by the use of impermissibly suggestive photographic arrays. We disagree.

The police assembled a photographic array consisting of frontal and profile facial views of nine persons who generally met the description given by the victim when she reported the assault. The photographs of defendant which were included in the first array were several years old.

Upon viewing that array, the victim's attention appeared to focus on defendant's photographs, but she remarked that the features shown appeared to be "too chiseled" or "too defined." She was then asked by a police officer whether "adding 20 pounds" to any of the subjects would assist her in making an identification, and she replied that it would not. No identification resulted from the victim's view of the first array.

Subsequently, the police assembled a second array which included more recent photographs of the defendant and eight other individuals. When the victim was shown the second array, several days after having viewed the first, she immediately identified defendant's photographs as those of her assailant.

An out-of-court identification procedure is impermissibly suggestive if there is a substantial likelihood of misidentification based upon the totality of the circumstances. *People v. Weller*, 679 P.2d 1077 (Colo. 1984). Some of the factors to be considered in evaluating these circumstances are: the witness' opportunity to view the criminal; the witness' degree of attention; the accuracy of any prior description; the witness' level of certainty; and the time elapsed since the crime. *People v. Borrego*, 668 P.2d 21 (Colo.App.1983).

The court considered these factors, among others, and made findings supporting its conclusion that the identification procedures used here were not impermissibly suggestive. We find no error in that ruling.

The fact that only defendant's photographs were included in both arrays does not, in itself, render the process impermissibly suggestive. *See People v. Duncan*, 754 P.2d 796 (Colo.App.1988). The record reflects that the victim was not shown both arrays at the same time, nor was she told that any of the subjects in the second array had also been included in the first. The officer's query whether adding 20 pounds to any of the subjects did not suggest that the victim select any of the photographs exhibited, nor did it prompt an immediate identification. Considering the lapse of

time between their use, and the distinct differences between defendant's features in the separate arrays, we find any conjecture that the question prompted the later identification to be tenuous at best. Such conjecture falls far short of demonstrating a substantial likelihood of misidentification.

■ Also, we reject defendant's argument that a photographic identification procedure is improper if the police could have conducted a corporeal lineup instead.

We conclude that evidence of both the victim's in-court and out-of-court identification was properly admitted here.

## II.

■ Defendant next contends that the court erred in admitting evidence from which the jury might have inferred his involvement in unrelated criminal activity. We disagree.

In investigating the reported assault, police discovered an apparently abandoned and partially dismantled car in a garage near the victim's apartment where the assault had occurred. They later learned that the vehicle belonged to defendant, who had reported it stolen 10 days prior to the assault.

The police auto-theft investigator thought it unusual that the owner's license plates had been left on the car for 10 days while it was apparently being "stripped," and that the "stripping" had apparently been accomplished in an unusually slow and methodical manner. Suspecting that the owner might have falsely reported the car's theft and his possible involvement in an "insurance scam," the investigator decided to check the owner's criminal record.

That check revealed that defendant did have a prior criminal record which included a conviction for sexual assault. Aware that a reported sexual assault had led to the car's discovery, the theft investigator suggested and assisted in including defendant's photographs in the arrays described in Part I of this opinion.

After a pretrial hearing, the court entered an order precluding the prosecution from offering trial testimony that alluded to defendant's prior criminal record. The order also precluded testimony about police suspicions of defendant's possible involvement in false reporting of auto theft or an "insurance scam," or about the car's having been "stripped." However, the court admitted testimony at trial that defendant had reported the car stolen on July 1, 1985; that it had been discovered by the police in the garage on July 10, 1985; that the theft investigator thought it "unusual" that license plates were still on the car when it was discovered; and that he had assisted in including defendant's photographs in the arrays. The court also admitted photographs taken by police which showed that, while the license plates were on the car, its engine and seats were missing when it was discovered.

### A.

Defendant argues that the court's rulings admitting the described evidence violated CRE 404(b). We disagree.

CRE 404(b) prohibits the admission of evidence of other crimes, wrongs, or acts offered either to prove a person's character or that the person acted in conformity therewith. *People v. Hansen*, 708 P.2d 468 (Colo.App.1985). However, that rule expressly permits the admission of such evidence for other relevant purposes, such as proof of opportunity and identity of the perpetrator of an offense. Such evidence is also admissible if it tends to explain the events leading up to the commission of a crime or the circumstances which led to a perpetrator's identification and arrest. *People v. Abeyta*, 728 P.2d 327 (Colo.App. 1986).

The trial court is vested with broad discretion in determining the relevance of evidence, and its decision will not be reversed on appeal unless an abuse of that discretion is shown. *People v. Lowe*, 660 P.2d 1261 (Colo.1983).

Here, the principal issue at trial was the identity of the perpetrator of the offenses. The challenged evidence was offered by the prosecution to establish links in the chain of circumstances that led to the identifica-

tion of defendant as the perpetrator. Discovery of defendant's car near the scene of the crime tended to establish a nexus between defendant and that location. Evidence of the theft report established defendant's acknowledgement of his actual possession of the car shortly before the time when the crimes occurred. Evidence of the vehicle's dismantled condition tended to explain and corroborate other evidence placing defendant in the vicinity of the crimes prior to their commission.

Accordingly, we conclude that the trial court did not abuse its discretion in finding the challenged evidence relevant to defendant's identification.

### B.

We also reject defendant's argument that the prejudicial effect of this evidence outweighed its probative value.

In reviewing a trial court's decision that the probative value of admitted evidence outweighs its potential prejudicial effect, we must assume the maximum probative value that a reasonable juror might accord such evidence, and the minimum prejudicial effect reasonably to be expected. *People v. Lowe, supra.*

Here, the trial court's suppression order barring any reference to police suspicion about "false reporting," "auto stripping," or "insurance scams," ameliorated the prejudicial impact that the evidence might otherwise have had. Under these circumstances, any inference of collateral misconduct which might have been drawn from the evidence was not sufficiently strong to require exclusion of the relevant evidence. *See People v. Perez*, 656 P.2d 44 (Colo.App. 1982).

### III.

Defendant next contends that the court's denial of his motion for mistrial based upon alleged prosecutorial misconduct requires reversal. We disagree.

In her initial report of the assault, the victim told police that her attacker had one tattoo on his chest and a second one on his upper right arm. In subsequent testimony at various pretrial hearings, the victim either gave similar descriptions of the tattoos or acknowledged, without qualification, her prior statements concerning them.

During direct examination at trial, the prosecuting attorney elicited testimony from the victim about her present recollection of her assault and her previous statements to police. He then asked: "As you look back now, do you remember seeing a tattoo on the upper right arm?" Upon receiving a negative response, he then elicited further testimony in which the victim acknowledged that, prior to trial, the prosecutor had told her that defendant had no tattoos on his arms. Defendant made no contemporaneous objection to any of the described testimony, but, at the conclusion of direct examination, he moved for a mistrial, asserting prejudicial prosecutorial misconduct.

### A.

Defendant argues that the prosecution's disclosure to the victim concerning the lack of tattoos on his arms, coupled with her ensuing change in testimony from accounts she had given earlier, evidences prosecutorial subornation of perjury and "improper coaching" sufficient to require a mistrial. We reject this argument.

Defendant's reliance on *People v. Terry*, 720 P.2d 125 (Colo.1986) and *People v. Millitello*, 705 P.2d 514 (Colo.1985) is misplaced. In those cases, witnesses told prosecutors that part of their previously presented testimony had been fabricated, and the prosecutors made no attempt either to correct the false testimony or to advise the court or the defense that false testimony had been presented.

Here, the record contains no evidence that the victim ever suggested to the prosecutor that she had lied, or that she believed any of her prior statements to be untruthful when she made them. Hence, there is no basis upon which to conclude that the victim ever gave perjured testimony, or that the prosecutor aided or assisted her in so doing. *See* §§ 18–1–501 through 18–1–

505, C.R.S. (1986 Repl.Vol. 8B); *COLJI–Crim.* Nos. 29:01–29:03 (1983).

The record is similarly devoid of evidence that the prosecutor attempted to induce the victim to recant her prior statements or testimony about the tattoos when she testified at trial. *See* § 18–8–707, C.R.S. (1986 Repl.Vol. 8B); *COLJI–Crim.* No. 25:17 (1983). The record reflects only that the prosecutor told her that defendant did not have one of the tattoos she had described in her prior reports. When, despite being so advised, the victim remained positive of her identification, the prosecutor engaged in no misconduct by placing all of the evidence bearing upon the issue of defendant's identification before the jury.

### B.

We also reject defendant's argument that the prosecutor's failure to disclose, prior to trial, the substance of his conversation with the victim about defendant's lack of arm tattoos is prosecutorial misconduct which warrants reversal.

For purposes of determining this issue, we will assume, without deciding, that the prosecutor violated a duty to provide required discovery or disclosure. However, even so assuming, we conclude that reversal is not warranted here.

■ A conviction will not be reversed because of non-compliance with discovery rules without a showing of resultant prejudice. *People v. Thatcher,* 638 P.2d 760 (Colo.1981); *People v. Graham,* 678 P.2d 1043 (Colo.App.1983). The trial court has broad discretion to grant or deny a mistrial, and its decision will not be disturbed on appeal absent the showing of a gross abuse of discretion and prejudice to the defendant. *People v. Abbott,* 690 P.2d 1263 (Colo.1984).

■ Evidence admitted in the absence of a timely objection or motion to strike is not grounds for reversal if a substantial right of the party claiming error is not affected. CRE 103; *People v. Abbott, supra.* To demonstrate prejudice, defendant must show that the error of which he complains deprived him of a substantial right or undermined the fairness of the proceedings so as to affect the outcome of the trial. *People v. Hickam,* 684 P.2d 228 (Colo.1984).

■ Here, the only purpose for the contested testimony was to allow the victim to explain a discrepancy between her initial reported description of her assailant and the physical characteristics of the defendant. The explanatory evidence was proper, whether it was presented during direct examination, cross-examination, or rebuttal.

The question of a witness' credibility is always deemed to be in issue and is to be determined by the jury. Defendant's right to confront and cross-examine the witness on this testimony was fully preserved by its presentation during direct examination, and neither the substance of the evidence nor the manner of its presentation has been shown to have unfairly affected the outcome of the trial.

### C.

■ Defendant's claim that he was unfairly surprised and was unable to prepare for effective cross-examination is belied by his failure to seek a recess or continuance and by defense counsel's complete and vigorous cross-examination of the victim concerning the discrepancy in the descriptions she had given of her attacker. Under these circumstances, defendant has failed to show prejudicial surprise. *See People v. Graham, supra.*

### D.

■ We find no merit in defendant's argument that his ability to plea bargain effectively was adversely affected by the claimed prosecutorial nondisclosure. Defendant was aware through discovery, well prior to trial, that the victim's descriptions of her assailant did not fully comport with his own tattoos. He was also aware that a critical issue at trial would concern whether that discrepancy could be explained to the jury's satisfaction. Accordingly, in evaluating whether to take the offered plea bargain, defendant made a tactical judgment based upon his speculation that the

prosecution, through the victim, would be unable to make a convincing explanation of the discrepancy. Under these circumstances, defendant cannot now complain of his own speculative error in attempting to predict if, when, or how the victim might explain the discrepancy.

### IV.

■ Defendant also contends that the court erred in refusing to suppress evidence of a 1977 Mesa County felony conviction to support his adjudication as an habitual offender. He argues that the Mesa County District Court was without jurisdiction to sentence him as an adult offender, and that his Mesa County guilty plea resulted from an improper advisement. We disagree.

The Mesa County aggravated robbery was committed when defendant was 17 years old. He was charged there as an adult because he had been previously adjudicated delinquent for another aggravated robbery by the Denver Juvenile Court in 1976.

Section 19–1–104(4)(b)(II), C.R.S. (1986 Repl.Vol. 8B) permits adult criminal filings under such circumstances. The determination whether to file delinquency or criminal proceedings in such cases is committed by the statute to the discretion of the district attorney. *See People v. Thorpe,* 641 P.2d 935 (Colo.1982); *Myers v. District Court,* 184 Colo. 81, 518 P.2d 836 (1974).

Here, the record supports the trial court's findings that neither defendant nor his counsel contested the Mesa County District Court's jurisdiction or the prior Denver juvenile adjudication in the Mesa County proceedings. The record also reflects that the Mesa County District Court had sufficient evidence of the prior Denver adjudication to warrant its exercise of jurisdiction in the 1977 proceedings. Thus, we conclude that the trial court did not err in its determination of the jurisdictional validity of the Mesa County conviction.

Our review of the record also convinces us that the trial court correctly determined that defendant's 1977 Mesa County guilty plea was entered after a proper advisement which substantially complied with Crim.P. 11. *See People v. Leonard,* 673 P.2d 37 (Colo.1983).

Hence, we perceive no error in the habitual criminal adjudication or in the sentence imposed pursuant thereto.

### V.

Defendant finally contends that the trial court erred in denying his *pro se* motion for new trial based upon his claim of ineffective assistance of counsel. This contention is without merit.

A criminal defendant is entitled to reasonably effective assistance of counsel, measured by an objective standard based upon prevailing professional norms. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A defendant who alleges a lack of effective assistance has the burden to show not only that counsel's performance did not meet the objective standard, but also that it prejudiced his defense in that, but for counsel's deficient performance, the result of the proceeding would have been different. *People v. Tackett,* 742 P.2d 957 (Colo.App. 1987).

■ Defendant's *pro se* new trial motion complained in conclusory terms of his counsel's lack of experience and available time to devote to his case, her bias against persons accused of sexual assault, and her failure to call witnesses he wanted to have testify in his defense. However, the record does not suggest the identity of those witnesses or indicate the substance or relevance of their testimony. Nor does the record contain any support for defendant's claim of bias. It does reflect that counsel diligently pursued discovery, filed appropriate motions, engaged in active and vigorous cross-examination of prosecution witnesses at pretrial hearings and at trial, and lodged proper objections to prosecution evidence.

Upon this record, we perceive no error in the trial court's conclusion that counsel had provided effective assistance to defendant and in its denial of the motion for new trial.

The judgments and sentence are affirmed.

METZGER and CRISWELL, JJ., concur.