569 P.2d 339 (1977)
The PEOPLE of the State of Colorado, Plaintiff-Appellee,
v.
Richard Melvin WILLIAMS, a/k/a Maurice Mullins, Defendant-Appellant.
No. 76-715.
Colorado Court of Appeals, Div. II.
September 1, 1977.
*341 J. D. MacFarlane, Atty. Gen., Jean E. Dubofsky, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., James S. Russell, Asst. Atty. Gen., Denver, for plaintiff-appellee.
Shuey & O'Malley, P.C., G. Thomas O'Malley, III, Denver, for defendant-appellant.
ENOCH, Judge.
Defendant, Richard Melvin Williams, also known as Maurice Mullins, appeals his conviction by a jury of the attempted aggravated robbery of Rosemary Hewitt, and the aggravated robbery of William Farmer. We affirm.
At approximately 11:25 a. m. on October 28, 1975, a man walked into the office of a service station at 3200 South Broadway in Englewood where Rosemary Hewitt was the cashier. He asked for a can of oil, and as Mrs. Hewitt placed a can of Double Eagle Oil on the counter, defendant gave her a five dollar bill. Mrs. Hewitt then turned and opened the cash register to get the man his change, and as she did so, he pulled a pistol from his rear pocket, pointed it at Mrs. Hewitt through the cashier's window, *342 and said "Hey babe." At this point Mrs. Hewitt's husband started to enter from another room, and the man hurriedly pocketed his gun, picked up the can of oil and his change, and walked out of the station.
Approximately 20 minutes later a man walked into the service station which William Farmer managed at 5179 South Broadway and demanded, at gunpoint, all of the money. Farmer complied with the demand, and after the robber had fled, Farmer called the police and described the robber as male, black, five foot ten inches tall, medium build, weighing about 145 to 150 pounds, wearing a dark shirt, dark pants, sunglasses, a cap with a bill, and carrying a jacket.
The robbery report was received and broadcast by the police at 11:47 a. m. and approximately six minutes later, two officers who were responding to the call, and who were waiting to enter traffic at 3700 South Broadway, observed defendant drive past them northbound on Broadway. Their attention was called to defendant because he was the first black person they saw drive past, and because he was wearing sunglasses. The officers then followed defendant and noticed that he was wearing "dark upper apparel." After a short distance they turned on their emergency lights and stopped defendant's car.
Defendant got out of the car, but returned to get his license and registration. While defendant was in the car purportedly getting these documents, the officers noticed him apparently reach for a small pistol. At this point, he was arrested and numerous incriminating items including a can of Double Eagle Oil, a small pistol, a fatigue hat, two jackets, and a sum of money consistent with that stolen from Farmer were recovered from the car. Subsequently Mrs. Hewitt identified defendant in a lineup as the person who attempted to rob her. Farmer was unable to make a similar identification.

I.
Defendant contends that the police illegally stopped his car, and that all evidence resulting therefrom, including the physical evidence seized and the lineup identification by Mrs. Hewitt should have been suppressed. We do not agree.
The issue is whether the police were warranted under Stone v. People, 174 Colo. 504, 485 P.2d 495, in initially stopping defendant's car. The propriety of the officer's actions at the scene after initially stopping the car is not questioned. In Stone, the following test for lawful temporary detentions for questioning was announced: (1) The officer must have a reasonable suspicion that the individual has committed or is about to commit, a crime; (2) the purpose of the detention must be reasonable; and (3) the character of the detention must be reasonable when considered in light of the purpose.
We agree with the trial court that there were sufficient factors present to create a reasonable suspicion at the time of the stop that defendant may have committed the crime: Defendant matched the description given of the robber, i. e., he was a black male and the only one observed by the officers, he was wearing sunglasses, and a dark shirt or jacket; he was only 14 blocks from the scene of the robbery and only six minutes had elapsed after the radio alert; and he was proceeding in a direction away from the service station. These facts were sufficient to create a reasonable suspicion in the officers' minds to justify a temporary stop of defendant for questioning. See People v. Shackelford, Colo.App., 546 P.2d 964.
In order to maintain the status quo temporarily, while the police seek to procure more information regarding possible wrongdoing, a Stone stop is permitted for the purpose of questioning a suspect, who might otherwise escape, regarding his identity. People v. Severson, Colo.App., 561 P.2d 373. Here, the officers wanted to learn defendant's identity and to question him about the robbery before he left the vicinity of the crime, and thus the purpose was reasonable.
*343 Finally, the character of the detention was reasonable in light of its purpose. No physical restraint was imposed on defendant until he apparently reached for a gun. He was merely stopped at the curb and asked to produce identification, which inquiry was especially important here because defendant's car had out-of-state license plates. Thus, the stop was lawful, and all evidence resulting therefrom was properly admitted.

II.
Defendant also contends that the court impermissibly restricted his questioning of Farmer about falsely reporting another robbery of the service station three weeks after defendant allegedly robbed it. Defendant wished to propound these questions about this later robbery both to impeach the credibility of Farmer and to give substantive evidence supportive of defendant's theory that Farmer falsely reported the robbery for which defendant was charged, and pocketed the money himself. We find no error.
At an in-camera hearing it was determined that Farmer would assert his Fifth Amendment right against self-incrimination in response to any questions about the robbery reported on November 12, and about his fraudulent use of a stolen credit card to account for cash taken from his employer on another occasion.
The court ruled that questions about the credit card incident could be asked of Farmer before the jury because defendant had independent evidence of this event, but that no questions about the alleged falsity of the second robbery report could be asked because defendant lacked independent evidence that this report was false.
Based upon the in-camera hearing, defense counsel knew that Farmer would assert his Fifth Amendment privilege against self-incrimination in response to questions related to the second robbery report. Two recent Colorado Supreme Court decisions, People v. Fletcher, Colo., 566 P.2d 345, and People v. Dikeman, Colo., 555 P.2d 519, hold that neither prosecution nor defense can ask its own witness a question which that party knows the witness would refuse to answer because of a valid claim of privilege against self-incrimination. The present case is distinguishable in that the scenario involves defense counsel's cross-examination of a prosecution witness, thus calling into play considerations of the accused's constitutional right of confrontation. Nonetheless, we believe the trial court did not err in restricting the extent of defense counsel's cross-examination of Farmer.
Defense counsel sought inquiry into the second robbery report for a dual purpose: (1) To advance a substantive theory of defense, i. e., that no robbery had in fact taken place and that Farmer utilized the robbery report of September 28 as a device to shield his own incursions into the service station's cash register; (2) to impeach Farmer's testimony, i. e., that Farmer had a motive to lie at trial. Defense counsel was allowed to question Farmer about his Bank Americard transactions and to produce extrinsic evidence regarding such. From this evidence, which was effective for impeachment purposes, the jury could infer that Farmer did indeed have a motive to lie at trial. And accordingly, inquiry into the second robbery report for the purpose of impeachment was unnecessary, since its effect would be merely cumulative. Hence, the primary purpose in inquiring into the second robbery report was to advance the defendant's substantive theory of defense. We agree with the prosecution's suggestion in the record that what defense counsel really attempted to achieve was to move beyond impeachment and to introduce evidence rightly belonging in its case-in-chief. In effect, the defense sought to make Farmer its own witness. In attempting to adopt Farmer as its own witness, defense counsel created a situation very similar to that found in Dikeman and Fletcher, supra. Considering that in the present case defendant lacked evidence to prove the inference he wished to convey, we find the following language in Dikeman particularly relevant:
[D]eception can be introduced into a trial if a defense counsel is allowed to *344 manipulate a witness' claim of privilege.. . . Neither the prosecution nor the defense therefore has the right to deliberately and unfairly benefit from any speculative inferences the jury might draw simply from a witness' assertions of the privilege.
Even if the defense is considered not to have adopted Farmer as its own witness and the inquiry is considered as being directed primarily towards impeachment, the trial court did not restrict defendant's constitutional right of confrontation.
A certain tension exists concerning two related but well-established principles of law: The trial court's discretion to determine the scope and limit of cross-examination and the accused's constitutional right to confront the witness testifying against him. The scope and limits of cross-examination for the purposes of impeachment regarding general credibility are within the sound discretion of the trial court. People v. Crawford, Colo., 553 P.2d 827. Limitations on the extent of cross-examination do not violate Sixth Amendment confrontation rights unless there is a clear abuse of discretion. United States v. McGregor, 529 F.2d 928 (9th Cir.). In Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347, the United States Supreme Court held that the accused's Sixth Amendment right of confrontation prevailed over a state policy of concealing juvenile delinquency adjudications when the fact of such status could be linked to the witness' bias, prejudice, or ulterior motive for testifying in the immediate case. Although recognizing the principle underlying Davis, our Supreme Court has held that cross-examination related to one's general credibility can be limited consistently with an accused's right of confrontation. People v. Taylor, Colo., 545 P.2d 703.
As stated in Taylor:
Cross-examination should be liberally extended to permit a thorough inquiry into the motives of the witness. . . . Within broad limits, any evidence tending to show bias or prejudice, or to throw light upon the inclinations of witnesses, may be permitted. . . . The trial court must, however, exercise its sound discretion to preclude inquiries that have no probative force . . . .
Superficially, the purpose of the inquiry here was to establish Farmer's ulterior motive to lie at trial, an impeachment matter well within defendant's right of confrontation. However, such an inquiry has no probative force when there is no independent evidence to support it and defense counsel knows in advance the inquiry will produce only the witness' assertion of his Fifth Amendment privilege against self-incrimination. See People v. Dikeman, supra. Therefore, the trial court, consistent with People v. Taylor, supra, acted properly within the scope of its discretion in precluding the inquiry.

III.
Defendant also claims that the jury returned inconsistent verdicts which must be set aside. We do not agree.
Defendant was charged with and convicted of the aggravated robbery of Farmer, but was acquitted of a charge of theft over $200 from Farmer's employer, Pester Colorado Corp.
The statutory elements of these crimes are different. Compare § 18-4-301 and 302, C.R.S.1973, with § 18-4-401(1)(a), C.R. S.1973 and § 18-4-401(2), C.R.S.1973 (1976 Cum.Supp.). Therefore the jury verdicts were not inconsistent and repugnant. People v. Mayfield, 184 Colo. 399, 520 P.2d 748.

IV.
While awaiting trial in this case, defendant was transferred from the Arapahoe County Jail to the Denver County Jail because of overcrowding at the former. While in the custody of the Denver Sheriff, defendant alleged that he was beaten and threatened by several sheriff's officers. There was corroborating testimony by other inmates as to the beatings claimed by defendant. Defendant claims that, because these beatings and threats were violations of his due process rights, and were also *345 infliction of cruel and unusual punishment, the charges against him should have been dismissed, or at a minimum, his sentence should be reassessed. This argument is without merit.
Even if we assume defendant was in fact beaten by Denver Sheriff's officers while those officers were acting as agents of the Arapahoe County Sheriff, defendant cites no authority, and we find none, which would affect the power of the court to try and convict defendant for the crime for which he is charged.
Also, defendant has incorrectly characterized the alleged beatings as punishment for his present crimes. Rather, by defendant's own testimony, it is apparent that the alleged beatings resulted from animosity of sheriff's officers toward defendant caused by his demeanor and actions on the jail bus. Thus his present crimes are only incidentally related to this "punishment" that he received. Therefore there is no basis to say that the alleged beatings constituted punishment which should have affected his sentencing in the present case. Defendant can seek relief through other remedies, such as 42 U.S.C. § 1983, and it appears from the record that he is in fact doing so.

V.
We also find no merit in defendant's claim that the evidence was insufficient to support the convictions.
The fact that defendant pointed a pistol at Mrs. Hewitt when she had opened the cash register was sufficient evidence to allow an inference of intent to take something of value from her person or presence and thus to support the attempted aggravated robbery conviction. See People v. Wilkinson, Colo.App., 561 P.2d 347.
Also, although Farmer was not able to identify defendant as the person who robbed him, Farmer's description of defendant and his apparel, which Farmer gave to the police when he reported the robbery immediately after it occurred, coincided with what the officers discovered on defendant or in his car after stopping him in the vicinity of the robbery. Additionally, the money found in defendant's car was consistent in amount and in the denominations of the bills, with the money Farmer claimed was taken in the robbery. Further, this robbery occurred just minutes after defendant attempted a similar robbery at a nearby station. This evidence, viewed in a light most favorable to the prosecution, was sufficient to support the conviction for aggravated robbery. People v. Eades, 187 Colo. 74, 528 P.2d 382.
Defendant's opening statement is not part of the record on appeal, and we therefore cannot review his contention that the trial court improperly limited that statement. See Taylor v. People, 176 Colo. 316, 490 P.2d 292; Mingo v. People, 171 Colo. 474, 468 P.2d 849.
Judgment affirmed.
SMITH and RULAND, JJ., concur.