**McMORGAN & COMPANY, Plaintiff,**

v.

**FIRST CALIFORNIA MORTGAGE COMPANY, et al., Defendants.**

**No. C–94–1115 WHO (BZ).**

United States District Court,
N.D. California.

Feb. 28, 1996.

Barry E. Hinkle, Van Bourg Weinberg Roger & Rosenfeld, Oakland, CA, Roderick A. McLeod, Brobeck Phleger & Harrison, San Francisco, CA, for McMorgan & Company.

Barry E. Hinkle, Van Bourg Weinberg Roger & Rosenfeld, Oakland, CA, for Carpenters Pension Trust Fund for Northern California, et al.

John L. Anderson, Neyhart Anderson Reilly & Freitas, San Francisco, CA, Christian L. Raisner, Van Bourg Weinberg Roger & Rosenfeld, Oakland, CA, for Sheet Metal Workers of Northern California Pension Trust Fund.

Roderick A. McLeod, Gregory L. Lippetz, Brobeck Phleger & Harrison, San Francisco, CA, for First California Mortgage Co.

Thiele R. Dunaway, Wendel Rosen Black & Dean, Oakland, CA, for Larkspur Creekside Associates, et al.

Jeffrey G. Nevin, Charles E. Finberg, Nevin & Hall LLP, Oakland, CA, Bernard L. Knapp, Ladar & Knapp, San Francisco, CA, for North Bay Properties, Inc., Valwest Development, Inc.

525 Court Street Partnership, Reno, NV, pro se.

Hal Gazin, Reno, NV, for Hal Gazin, dba Hi Tech Ltd., Douglas W. Bailey, Gosliner/McLean Associates, CSW Consultants.

Herbert W. Yanowitz, San Francisco, CA, for Daniel Fox & Associates, Project Control Company, Henry Batteate, Jr., Pro Mag, Inc.

Steven Lanum, Boornazian Jensen & Garthe, Oakland, CA, for Payne Thompson Walker & Taaffe.

Peter O. Glaessner, Hardin Cook Loper Engel & Bergez, Oakland, CA, for City of Reno, National Union Fire Insurance Company.

ZIMMERMAN, U.S. Magistrate Judge.

Plaintiff McMorgan & Company is an investment manager and fiduciary for several pension trust funds, which are subject to the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq. ("ERISA"). Defendant First California Mortgage Company sold the trust funds a number of residential construction loans, upon which it retained loan servicing obligations. After borrowers defaulted on some of the construction loans, Plaintiff sued Defendant under ERISA for an accounting and for breach of fiduciary duty, as well as for breach of contract and other state law claims. Plaintiff alleges that Defendant committed fraud and negligence in servicing the loans.

Asserting the joint client exception to the attorney-client privilege, Defendant moves to compel discovery of privileged communications [1] between the law firm Payne, Thompson, Walker & Taaffe ("Payne Thompson") and Plaintiff or the trust funds. Defendant claims it is entitled to "all documents relating or referring to" Payne Thompson's represen-

---

1. Defendant concedes that the communications it seeks are subject to the attorney-client privilege.

tation of Defendant, Plaintiff or the trust funds "on any issue relating to the construction loans serviced by" Defendant.

Because this is a federal question case, the Court applies federal common law principles governing the attorney-client privilege. *See Clarke v. American Commerce Nat'l Bank,* 974 F.2d 127, 129 (9th Cir.1992). However, there appear to be no pertinent federal common law cases from the Ninth Circuit. In other federal circuits, the federal common law on the joint client exception is ambiguous, with no single, coherent theory having been adopted. *See* Paul R. Rice, *Attorney–Client Privilege in the United States* §§ 4:30–4:33 (1993 & 1995 Supp.). Where federal privilege law is not clearly inconsistent, it is appropriate to invoke state law principles "to accommodate the legitimate expectations of the state's citizens." *Pagano v. Oroville Hosp.,* 145 F.R.D. 683, 687–88 (E.D.Cal.1993). Accordingly, the Court looks to California law for guidance on the joint client exception to the attorney-client privilege.

The party asserting the joint client exception has the burden of establishing its existence. *See Sky Valley Ltd. Partnership v. ATX Sky Valley Ltd.,* 150 F.R.D. 648, 650 (N.D.Cal.1993) (applying California law). Here, Defendant has established that it and Plaintiff were each clients of Payne Thompson for at least some of the period in dispute and that Payne Thompson introduced Plaintiff to Defendant and helped initiate the business relationship between them that gave rise to this dispute. However, Defendant has failed to establish that Payne Thompson's simultaneous representation of Plaintiff and Defendant was a joint client relationship in which the parties had substantially similar, if not identical, legal interests, *see id.* at 661, let alone a relationship of the scope necessary to justify the wholesale breach of the attorney-client privilege that Defendant seeks.

Defendant contends that a joint client relationship existed during at least two phases of its relationship with Plaintiff. First, commencing in mid–1986, Defendant contends that it and Plaintiff were joint clients of Payne Thompson for purposes of initially creating a series of documents for use in making construction loans to third parties and then obtaining advice in connection with various lending relationships.

The evidence produced by Defendant in support of this contention is ambiguous and conclusory at best and non-probative at other times. For example, the testimony of Defendant's President, Mr. Hart, that his understanding of what it means to be an ERISA fiduciary was based on advice from Payne Thompson apparently given prior to 1986, does not establish that the advice was given in furtherance of the asserted joint client relationship with respect to any of the construction loans in dispute.

Defendant has not shown that it, rather than the trust funds or Plaintiff, controlled Payne Thompson's actions regarding the construction loans. Nor has Defendant shown that it paid Payne Thompson for any legal services regarding any of the construction loans. While Defendant submitted various documents that Payne Thompson apparently created for mutual use by Plaintiff and Defendant in the loan transactions, those documents appear to have been created at Plaintiff's request. Indeed, the evidence suggests that Plaintiff directed Payne Thompson to communicate with various entities, including Defendant, regarding the construction loans. The Court concludes that Defendant dealt with Payne Thompson in matters related to the loans, not as a joint client, but as an agent of Plaintiff or the trust funds.[2] An agent's communication with the principal's law firm at the principal's request and in furtherance of the principal's business does not, without more, create a joint client relationship between the agent and the principal's law firm. *See Sky Valley,* 150 F.R.D. at 656–57.

---

2. Defendant has many documents it received from Payne Thompson pursuant to this relationship. The documents it now seeks were not copied to it, further evidence that Payne Thompson did not consider Defendant its client for the purpose for which the privileged documents were created.

Payne Thompson submitted evidence that it never intended to jointly represent both parties. It asked for, and apparently received, permission to handle work concurrently for Defendant, Plaintiff, and the trust funds. Several Payne Thompson lawyers testified to the efforts they made to maintain separate, confidential relationships with Plaintiff and Defendant during the period when both were Payne Thompson clients. At one point, when Defendant sought counsel from Payne Thompson in a matter related to the construction loans, Payne Thompson informed Defendant that its loyalty would lie with the trust funds if a conflict arose. Payne Thompson ultimately refused to represent Defendant in that matter when Plaintiff refused it permission to do so.

 Defendant's second contention is that a joint client relationship existed when Payne Thompson represented Plaintiff and Defendant in two actions arising out of the construction loans filed by third parties ("third party suits").[3] This representation occurred when, at Defendant's request, Plaintiff agreed to defend and indemnify Defendant and asked Payne Thompson, which was representing Plaintiff, to represent Defendant as well. While one attorney representing two clients in a dispute with third parties is a factor favoring the existence of a joint client relationship, such an arrangement is not dispositive. See Sky Valley, 150 F.R.D. at 653. Defendant has not shown that it was obligated to pay, or actually paid, any portion of Payne Thompson's fees, or that it "played a decision-making role comparable to the role that the law empowers clients to play" in the third party suits. Id. at 652. Defendant has not demonstrated that it played anything other than a passive role in the third party suits. It does not appear that Defendant was threatened effec-

tively with liability.[4] Thus, with regard to privileged communications between Plaintiff and Payne Thompson concerning the third party suits, Defendant has failed to establish the existence of the joint client exception to the attorney-client privilege.

An examination of the public policy goals underlying the joint client exception strengthens the conclusion that Defendant's motion should be denied. Foremost of these public policy goals is assuring that one "client" is not denied a fair resolution of a conflict with the other "client" due to unequal access to information. Id. at 653. Defendant has made no showing that it will be unable to defend this suit without access to admittedly privileged communications between Plaintiff and its lawyers.[5]

The public policy goals underlying the joint client exception also suggest that the exception should not be applied to the third party suits. Defendant has made no showing that it did provided confidential information to Payne Thompson or otherwise participated in Payne Thompson's defense of the third party suits. It was Plaintiff who directed Payne Thompson's efforts to defend the third party suits. Denying Defendant access to attorney-client communications between Plaintiff and Payne Thompson regarding the third party suits is not unfair because it places Defendant in a position certainly no worse than if Plaintiff had simply chosen not to provide it with a defense. Defendant has not shown that it relied on Payne Thompson's defense of the third party suits in such a way that fairness now requires it to be given access to otherwise confidential communications. Furthermore, applying the joint client exception in this situation would discourage people from providing each other with a defense in cases where they would otherwise be inclined to do so. The joint client exception

---

3. Exercising an abundance of caution, the Court ordered Plaintiff to submit for in camera review all privileged documents relating to the Stonefield litigation, one of the matters in which Defendant was defended by Payne Thompson. The bulk of the documents are routine transmittals of pleadings and other court filings or are billings and related documents. There are a few documents that contain factual information furnished for the rendering of legal advice and one formal opinion of counsel. In reviewing these docu-

ments, the Court found nothing to suggest a joint client relationship involving Defendant.

4. Defendant's counsel stated during argument that the claims against Defendant in the third party suits were frivolous.

5. For example, the documents transmitted by privileged communications are themselves generally not privileged.

was not designed to create such a wasteful incentive. *See id.* at 661 (finding no joint client exception, in part because it "would unjustifiably require parties far too often to bear the expense and strain of retaining two sets of lawyers").

Accordingly, the Court concludes that the joint client exception to the attorney-client privilege is not applicable to the documents between Payne Thompson and Plaintiff or the trust funds which Defendant seeks to inspect.

Defendant further argues that Plaintiff has waived the right to assert the attorney-client privilege by failing to assert the privilege and by stipulation. A waiver cannot be inferred from the alleged failure by Plaintiff's counsel to assert the privilege at the deposition. Counsel's actions were based on a representation made by Defendants' attorney, which Plaintiff's counsel apparently later learned was incorrect. Furthermore, the deposition questions which the witness was permitted to answer were limited to a single exhibit and did not intrude into areas protected by the privilege.

The Court has broad discretion in deciding whether to hold the parties to a stipulation. *See Seymour v. Summa Vista Cinema,* 809 F.2d 1385, 1388 (9th Cir.1987). The Court may relieve a party from a stipulation entered into it by inadvertence, where the opposing party would not be prejudiced. *See United States v. McGregor,* 529 F.2d 928, 931–32 (9th Cir.1976). At the time the stipulation purporting to reorganize a joint client relationship was made, Plaintiff's counsel appears to have had difficulty ascertaining the real nature of Payne Thompson's role in the construction loans, because discovery against Payne Thompson had been stayed. A facsimile transmission, but no executed copy of the stipulation, was sent to Defendant; Plaintiff rescinded shortly thereafter. The authority of Plaintiff's attorney to even enter into the stipulation is unclear. Nor has Defendant shown reliance such that it will be prejudiced if the stipulation is set aside. Given these reasons, the importance of this issue, and the Court's view that no joint relationship existed, the Court will not hold the parties to the stipulation. Defendant's motion to compel is denied.