COMMON CAUSE, SOUTHERN CHRISTIAN LEADERSHIP CONFERENCE OF GREATER LOS ANGELES, Southwest Voter Registration Education Project, Chicano Federation of San Diego County, American Federation of Labor and Congress of Industrial Organizations, Bryan Cahn, Miguel Contreras, Laura Ho, Reverend Norman Johnson, Joanne McKray, Trisha Murakawa, Thomas Rankin, and Bob Richards, Plaintiffs,

v.

Bill JONES, in his official capacity as California Secretary of State, Defendant.

No. 01–CV–3470–SVW.

United States District Court, C.D. California, Western Division.

April 26, 2002.

Stephen M. Kristovich, Bradley S. Phillips, Deborah N. Pearlstein, Munger Tolles & Olson, Los Angeles, CA, John C. Ulinn, Heller Ehrman White & McAuliffe, Los Angeles, CA, Mark D. Rosenbaum, Daniel P. Tokaji, ACLU Foundation of Southern California, Los Angeles, CA, Evan H. Caminker, Munger Tolles & Olson, San Francisco, CA, Alan L. Schlosser, ACLU Foundation of Northern Cal., Jordan C. Budd, ACLU Foundation of San Diego &

Imperial Counties, Stephen P. Berzon, Jonathan Weissglass, Altshuler, Berzon, Nussbaum, Rubin & Demain, Jonathan P. Hiatt, Laurence E. Gold, AFL-CIO, for Plaintiffs.

Daniel George Stone, Louis R. Mauro, CAAG—Office of Attorney General of California, Correctional Law Section, Sacramento, CA, Douglas J. Woods, CAAG Office of Attorney General of California, CA, for Defendant.

## ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDER- ATION

WILSON, District Judge.

### I. INTRODUCTION

On February 19, 2002, this Court issued an order finding that, based on the uncontroverted evidence in the record, as well as the admission by Defendant at oral argument, it was feasible for the nine California counties currently using the pre-scored punch card voting systems to convert to "other certified voting equipment" by March 2004. Therefore, as that was the only issue to be decided at trial, pursuant to the October 12, 2001 Stipulation and Order, the parties were directed to lodge a form of consent decree within seven days after the issuance of the order.

Defendant now brings a motion for reconsideration claiming that the Court had failed to consider the order's negative impact on the public interest. Furthermore, Defendant claims that the Court's order was improperly issued.

As set forth below, Defendant's motion for reconsideration is DENIED.

### II. DISCUSSION

#### A. Failure to Consider the Public Interest

On October 12, 2001, the parties entered into a stipulation, signed by the Court, wherein they agreed that the only issue remaining in the case prior to the parties entering into a consent decree was "whether it is feasible to replace Votomatic

and Pollstar punch-card voting systems with other certified voting equipment in the nine California counties that currently use such systems in advance of either the 2004 primary election or the 2004 general election." On February 19, 2002, the Court ruled on that issue, thereby eliminating all remaining triable issues that had been set forth by the parties.

Now Defendant alleges that the Court should have considered issues other than the only issue that the parties had previously agreed to have this Court decide. In particular, Defendant argues that the Court neglected to consider "how the public interest would greatly benefit from providing the affected counties with the option of converting to touch screen voting systems." Defendant's Motion For Reconsideration, at 2.

However, the issue of touch screen voting systems is not before the Court in this case. Through the October 12th stipulation, the parties knowingly and voluntarily narrowed the triable issue in this case to encompass only the feasibility of converting to non-punch-card certified voting systems in time for the 2004 elections. Accordingly, the Court enforced that stipulation and confined the trial to that issue.[1] *See Sinicropi v. Milone*, 915 F.2d 66, 68 (2d Cir.1990) ("Courts generally enforce stipulations that narrow the issues in a case."); *FDIC v. St. Paul Fire & Marine Ins. Co.*, 942 F.2d 1032, 1038 (6th Cir.1991) ("Stipulations voluntarily entered by the parties are binding …"). Since there were no material facts in dispute concerning the interpretation of "feasibility," nor any dispute concerning the facts relevant to a resolution of the triable issue, the Court properly decided this case as a matter of law.[2]

In making its decision, the Court considered all of the relevant factors bearing on the triable issue. At the commencement of this case, the underlying issue was whether the use of the pre-scored punch card voting systems (specifically, the Votomatic and Pollstar systems) were in violation of the Fourteenth Amendment and the Voting Rights Act. That *issue was never reached by the Court*, because, subsequent to the filing of this action, Defendant Secretary Jones agreed to decertify the Votomatic and Pollstar systems, thereby making the issue of their constitutionality moot. Nevertheless, as the parties agreed upon in the October 12th stipulation, "the Court shall, in determining

---

1. Secretary Jones has not argued that this Court should set aside the stipulation. At oral argument on this motion, the Court specifically pointed out this fact to Defendant, and still Defendant did not make such a request. A request to set aside a stipulation is permitted under prevailing law, if, for example, adherence to such a stipulation would have resulted in manifest injustice to a party, or if a party entered into the stipulation by inadvertence. *See Seymour v. Summa Vista Cinema, Inc.*, 809 F.2d 1385, 1388 (9th Cir.1987) *amended by* 817 F.2d 609 (9th Cir.1987); *McMorgan & Co. v. First California Mortgage Co.*, 931 F.Supp. 699, 703 (N.D.Cal.1996) ("The Court has broad discretion in deciding whether to hold the parties to a stipulation.").

 However, since Defendant has not argued that any reasons exists why this Court should set aside the stipulation, nor has he even made such a request, the Court will enforce the stipulation as agreed upon by the parties.

2. In his trial brief, Defendant noted, in support of his argument for the proper interpretation of "feasible," that Secretary Jones had rejected the term "possible" in favor of the word "feasible" in drafting the stipulation. While the Court considered this argument in its determination of the proper interpretation of "feasible," Defendant had not presented, nor had he indicated any intention to present, any evidence in this regard for trial. Furthermore, even now, neither party has asserted that an interpretation of the word "feasible" would require consideration of extrinsic evidence, instead of being a legal determination capable of being made by the Court at this time.

whether it is feasible to replace such systems in advance of either 2004 election, apply the same standards that would have applied if Plaintiffs had prevailed on the merits of their claims." Therefore, the Court was directed to address the issue of whether it was feasible to replace the Votomatic and Pollstar systems assuming that the use of such systems amounted to a violation of the Fourteenth Amendment right to equal protection of the law and the fundamental right to vote.

Now, despite having stipulated to the issues set forth above, Secretary Jones contends that the Court should have not only decided whether it was feasible to replace the current systems with other systems that Secretary Jones has certified as suitable for use, but also whether such a change is in the public interest. The Court finds it self-evident that replacing voting systems that deprive individuals of the right to vote is clearly in the .public interest The only question remaining for the Court to decide, as set forth the parties, was whether such a change could feasibly be accomplished in time for the 2004 elections. In this motion, however, Secretary Jones essentially contends that the public interest was not properly considered by the parties in agreeing to the feasibility issue being the sole issue for trial, and as a result the Court must also decide whether the public interest would be better served by allowing the use of these presumably-unconstitutional punch card systems in the 2004 election, in exchange for the counties being able to implement the touch screen voting systems by July 2005.

Secretary Jones is essentially creating a new issue for trial, disguised as a claim that the public interest was ignored in the issuance of the Court's order. He makes this argument notwithstanding the fact that the public interest is actually the sole reason why this Court needed to decide

whether it was feasible for the punch card system to be replaced with a certified system—as determined *by Secretary Jones himself*—in the first place.

Nevertheless, even if this Court was faced with the issue of deciding whether the public interest is better served by allowing more time for the nine California counties at issue to implement a touch screen system, the Court has no authority to direct such a result. The fact remains that the counties are not parties to this case. The Court cannot mandate that any county use any particular voting system, and neither can Secretary Jones. As stated at oral argument, the only authority that the Secretary of State has in this regard is whether to certify systems or decertify systems. Accordingly, since Secretary Jones has not indicated any intention to decertify every system other than the touch screen system, there can be no requirement that the counties implement the touch screen system at all! Even if the Court decides that the public interest is best served by the use of the touch screen systems, and directs the Defendant to decertify the punch card systems by 2005, or even 2010, there is still absolutely no guarantee that the counties would implement a touch screen system, even if they stated an intention to do so. All that is required under the law is that the counties use certified systems. Since the Court has concluded that it was feasible for these counties to convert to "other certified systems" in time for the 2004 elections, as set forth in the February 19th Order, the only issue properly before the Court has been decided, and has been decided in proper consideration of the public interest of eliminating systems that deprive individuals of the right to vote.

Therefore, Defendant has not satisfied the requirements under Local Rule 7–18, which requires a motion for reconsidera-

tion to be based on "a manifest showing of a failure to consider material facts presented to the Court."[3] The Court has considered all of the material facts presented, and issued its order accordingly.

## B. Procedural Basis for the Court's Decision

██ Defendant also argues that the Plaintiffs' request for judgment as a matter of law was really an improperly disguised summary judgment motion. Defendant's argument is without merit.

The Court's order was not based on a summary judgment motion pursuant to *Fed.R.Civ.P.* 56(c). Rather, the Court made a judgment as a matter of law pursuant to its authority to grant summary judgment *sua sponte* in the context of a final pretrial conference. *See Portsmouth Square, Inc. v. Shareholders Protective Comm.,* 770 F.2d 866, 869 (9th Cir.1985). As set forth in *Portsmouth,* "If the pretrial conference discloses that no material facts are in dispute and that the undisputed facts entitle one of the parties to judgment as a matter of law, a summary disposition of the case conserves scarce judicial resources. The court need not await a formal motion, or proceed to trial, under those circumstances." *Id.*

Here, as indicated by the Defendant's admission at the pretrial conference, no material facts concerning the only triable issue were in dispute. As a result, Plain-

tiff was entitled to judgment as a matter of law, as set forth in the Court's February 19th Order. Furthermore, Defendant had a full and fair opportunity to develop and present facts and legal arguments in support of its position, and therefore this Court's motion was proper. *See id.; Berkovitz v. Home Box Office, Inc.,* 89 F.3d 24, 29 (1st Cir.1996) ("Though a district court may enter summary judgment sua sponte at, or in consequence of, a pretrial conference, the court must ensure that the targeted party has an adequate opportunity to dodge the bullet.").

Defendant does not claim that he was not fully heard on the issue of the feasibility of converting from the punch card systems to other certified systems by the 2004 elections. Indeed, at the time of the ruling, the record contained both Defendant's 24–page Memorandum of Contentions of Fact and Law and Defendant's 20–page Trial Brief. Moreover, pursuant to the Court's July 2, 2001 Order re: Civil Trial Preparation, in which the parties were required to submit declarations containing the direct testimony of their witnesses, Defendant had already submitted the extensive declarations of his primary witnesses. Finally, Defendant plainly acknowledged at oral argument on February 4, 2002 that it was in fact possible for each of the nine California counties using the punch card system to covert to other systems by the 2004 election.[4]

---

3. "A 'material' fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit." *T.W. Electrical Serv., Inc. v. Pacific Electrical Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987).

4. In all of his submissions, Defendant has never denied the fact that it is possible to change from pre-scored punch card voting systems to other certified voting equipment by the 2004 elections. His only argument in this regard is that it is preferable for the counties

to use the touch screen system instead of any other system. While this is arguably so, the Court was never asked to decide which system was most optimal out of all of the certified systems, only whether a change to another certified system was feasible. Since, as discussed above, Defendant has never asked this Court to relieve his of the stipulation and consider the issue of whether the touch screen system is the most desirable system, the Court was able to decide the only triable issue set forth by the parties at the time its ruling was made.

Furthermore, contrary to Defendant's argument, Defendant did have an opportunity to respond to Plaintiffs' arguments. The Court specifically inquired of Defendant at the February 4th Pretrial Conference, upon learning that Plaintiffs intended to raise the issue in their trial brief of whether the feasibility question was already conclusively determined, whether Defendant intended to respond to that brief. Defendant indicated that his trial brief was a response to Plaintiffs' opening brief, in which the same substantive argument was raised. In fact, Defendant's trial brief did address the precise issues considered by the Court in making its February 19th ruling, including the issues related to the feasibility of changing voting systems, and Defendant's arguments regarding the public interest concerns. Additionally, in his current motion for reconsideration, Defendant has once again had the opportunity to point out any facts that he felt the Court should have considering in making its ruling, and the Court has duly considered his arguments.

Moreover, the Court's ruling would have also been proper under *Fed.R.Civ.P.* 52(c). According to Rule 52(c), "If during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue."[5]

Therefore, the Court's February 19, 2002 Order, wherein the Court has set forth its requisite findings of fact and conclusions of law, was procedurally authorized and constitutes a valid final judgment on the only triable issue asserted by the parties in this case.

## III. CONCLUSION

As discussed above, Defendant's motion for reconsideration is DENIED.

IT IS SO ORDERED.

---

**5.** Defendant contends that Rule 52(c) only allows a trial court to enter a judgment as a matter of law after the commencement of trial. However, the Advisory Committee Note discussing the 1991 Amendment, in which subdivision (c) was added, contains the following language: "[Subdivision (c) ] parallels the revised Rule 50(a), but is applicable to non-jury trials. It authorizes the court to enter judgment *at any time* that it can appropriately make a dispositive finding of fact on the evidence." Fed.R.Civ.P. 52, Advisory Committee Notes (emphasis added). To the extent that "at any time" could be construed to mean at any time during trial, the Court had already directed the parties to submit, prior to trial, the direct testimony of their witnesses in the form of declarations, signed under penalty of perjury, pursuant to its July 2, 2001 Order re: Civil Trial Preparation. Therefore, Defendant's primary witnesses had already testified, and the Court was able to make a dispositive finding of fact subsequent to that testimony.